### Pauline CRUMLEY *v.* Morgan BERRY d/b/a Morgan Berry Appliance

88-313                                              766 S.W.2d 7

Supreme Court of Arkansas
Opinion delivered February 27, 1989

*James C. Luker*, for appellant.

No brief filed.

STEELE HAYS, Justice. The only question in this case is whether a "rental with option to purchase" agreement constituted a sale and not a true lease.

Pauline Crumley, the appellant, entered into "rental with option to purchase" contracts for a used refrigerator and microwave oven with Morgan Berry Appliance, the appellee. Berry supplied form contracts which allowed for a week-to-week rental only, with no requirement that the lessee continue the contract for more than one week. There was an option to buy the specified property after an agreed number of weeks, the only consideration being the lessee's fulfillment of the obligations of the contract, i.e., the weekly payments for the specified number of weeks.

The refrigerator contract was signed on June 30, 1986, and provided for a weekly rental fee of $17.90. If Ms. Crumley chose to rent for fifty-two weeks and fulfilled the obligations of the contract for that period of time, title would be transferred to her name. The refrigerator's ticketed purchase price was $599.95. The microwave contract was signed on November 15, 1986, and provided for a weekly rental fee of $10.00, with transfer of title if

the lessee paid for forty weeks. The cash price of the microwave was $250.

Ms. Crumley made her regular weekly payments on both items until just prior to April 3, 1987. At that time she had made thirty-nine payments on the refrigerator, a total of $698.10, and nineteen payments on the microwave, a total of $190. While the record is not entirely clear, it appears Ms. Crumley stopped making payments because she thought her accumulated payments for both appliances at that time equalled the cash price of both items.

When Ms. Crumley stopped making payments, Mr. Berry made several attempts to repossess the appliances, but Ms. Crumley would not relinquish them. On October 2, 1987, Mr. Berry brought suit in municipal court and a judgment was entered in his favor.

Ms. Crumley appealed to the circuit court, and a bench trial was held on April 25, 1988. The only evidence presented was the rental contract and testimony by Mr. Berry and Ms. Crumley, each relating the basic facts of the transaction. After their testimony, Ms. Crumley moved for a directed verdict on the grounds that the rental agreement was in reality a financing arrangement for a sale and was usurious.

The trial court denied the motion, finding the agreement to be a true lease and entered judgment for Mr. Berry. Ms. Crumley appeals from that judgment, alleging that the trial court erred in finding the agreement was a true lease.

When considering whether a particular agreement constitutes a lease or a sale, we look at a number of factors to determine the nature of the contract. See *Hill* v. *Bentco*, 288 Ark. 623, 708 S.W.2d 608 (1986); *Bell* v. *Itek*, 262 Ark. 22, 555 S.W.2d 1 (1977). The agreement in this case includes one particular factor that would strongly favor an interpretation of a sale: the option to buy the items at the end of a specified period of weeks for no additional cost, or in other words, the "absence of any appreciable residual in the lessor at the end of the lease." *Hill* v. *Bentco, supra*. This factor was significant in both *Hill* v. *Bentco, supra*, and *Bell* v. *Itek, supra*.

Still, as noted in *Hill*, all factors must be considered and

looking further in this case, what is noticeably absent is any obligation on the part of the lessee to make payments equivalent to the purchase price of the items, an obligation present in both *Hill* v. *Bentco* and *Bell* v. *Itek*. Under the contract, Ms. Crumley was free to terminate the arrangement at the end of the first week, or any subsequent week. There was no obligation to continue payments for the specified periods. This course of action was completely optional with Ms. Crumley. Is such an obligation necessary to finding a contract for sale?

We have not previously considered this question, but from an examination of other jurisdictions and authorities, it appears that the greater weight of authority agrees that when the lessee has the right to terminate at any time and is under no obligation to make payments equivalent to the purchase price of the leased goods, it will generally preclude a finding that the arrangement is a sale and not a lease.

A basic test was devised by Professor Peter Coogan to distinguish a true lease from a conditional sale:

> Where the lessee has agreed to pay an amount substantially equal to the value of the goods of which he is to become the owner (or has the option to become the owner), the parties have entered into a conditional sale agreement. P. Coogan, *Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1-201(37) and Article 9,* Benders Secured Transactions Under the Uniform Commercial Code § 4A.07[1] (1977).

This test is discussed in Ronald M. DeKoven, Leases of Equipment: *Puritan Leasing Company* v. *August*, A Dangerous Decision, 12 Univ. San Francisco L. Rev., p. 259 (1978):

> Coogans' test established the following three elements as the *sine qua non* for determining whether a lease is a finance lease: (1) there must be an agreement by the lessee to pay the lessor a set amount; (2) such amount must be equivalent to the value of the leased goods;[13] and (3) the lessee must become the owner or have the option to become the owner of the leased goods. If any one of these elements is lacking, the lease is not a finance lease, but a true lease. The test is of great significance as it not only determines the

nature of the transaction, but it also determines the law applicable to the enforceability of the rights and remedies of the parties thereto.

---

13.   "[I]f a lease contains an option in the lessee to terminate, then there is no obligation to pay an amount substantially equal to the purchase price and thus no conditional sale under pre-Code law as well as no security interest under the UCC." Coogan, § 4A.01[5][c]. [Our emphasis.]

The purchase price obligation was recently discussed in *In Re Armstrong*, 84 B.R. 94 (1988 W.D. Tex.), where the court reemphasized that before any other factors are considered, it must be first determined that the lessee was under an affirmative obligation to pay the equivalent of the purchase price. *Armstrong*, citing *In Re Peacock*, 6 B.R. 922 (N.D. Tex. 1980), among several others for this proposition, notes *Peacock's* three-tier analysis for making the lease/sale distinction. The first tier is the obligation to pay the equivalent purchase price and the second tier is the "no or nominal consideration" test. *Armstrong* further notes that *Peacock* requires that that first tier must be met before proceeding with the next tier of the "no or nominal consideration" test.

In B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, § 1.5[4] (1980), the obligation to pay the full purchase price is listed as one of five key factors in the lease/sale distinction. Clark's 1988 Supplement elaborates on this issue, discussing *In Re Marhoefer Packing Co.*, 674 F.2d 1139 (7th Cir. 1982), one of the leading cases requiring the full payment obligation as a prerequisite to finding a sale over a lease. Clark writes:

> The *Marhoefer Packing* decision makes great good sense. In defining a "security interest" to include leases with nominal purchase options in § 1-201(37), the drafters of the Code were attempting to stop form from overwhelming substance. They were trying to catch disguised conditional sales and purchase money loans. But when the lessee can terminate the transaction early by returning the property, the purpose behind the definition in § 1-201(37) is gone and the transaction should be considered as a legitimate lease, even though the lease also provides that if rent is paid

for a certain period, the lessee has an option to purchase the goods for nominal or no consideration. B. Clark, *supra*, § 1.5[3] (1988 Supp.)

While there has not been complete agreement on this issue,[1] recent developments in the Uniform Commercial Code may well minimize the significance of previous cases which have overlooked the purchase price obligation. As noted in R. Hillman, J. McDonnell, S. Nickles, Common Law and Equity Under the Uniform Commercial Code, § 18.05[3][a] (1988 Cum. Supp.), Article 2A, which governs true leases, has been added to the official uniform version of the Code. The definition of "security interest" includes the following:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods *is an obligation for the term of the lease not subject to termination by the lessee, and (a) The original term of the lease is equal to or greater than the remaining economic life of the goods.* Uniform Commercial Code Article 2A, Leases, Conforming Amendment Section 1-201(37). [Our emphasis.]

Hillman, et al. comments on the changes indicated by this new addition to the Code:

Most important, the new definition adopts the case law holding that, even when there is no option to purchase, a lease is a secured transaction if the lease term is equal to or greater than the economic life of the goods. *On the other hand, the new definition rejects the cases that allow that a lease is intended as security even though the lessee has a free right to terminate the arrangement. Id.* [Our emphasis.]

---

[1] As Coogan himself notes, see P. Coogan, W. Hogan, D. Vagts, *Secured Transactions Under the Uniform Commercial Code* § 29A.05[1][a] (1987 Supp.), noting authority contrary to *Marhoefer: In re J.A. Thompson & Son, Inc.*, 665 F.2d 941 (9th Cir. 1982). See also *In re Elliott*, 18 B.R. 602 (D. Neb. 1982); *Sight & Sound of Ohio, Inc.* v. *Wright*, 36 B.R. 885 (D.C. 1983); *In re Puckett*, 60 B.R. 223 (M.D. Tenn. 1986).

In light of the foregoing, we hold that the sounder view requires as a prerequisite to finding a sale, that there be an obligation to pay the purchase price of the leased goods. There may be exceptions to this general proposition, for example, where in spite of the language of the contract, the lessor is clearly led to believe the arrangement is a sale. See *In re Puckett, supra.* Those are not the facts before us, however.

Here, there was no evidence to show Ms. Crumley was led to believe the arrangement was a sale and not a lease. While she testified that when she made the payments at the store she had told the secretary she was buying the items, there was no evidence to show, nor did Ms. Crumley even claim that anyone at Berry's store had done or said anything to give her the impression that the transaction was anything but a lease. The only evidence offered on that account was the lease itself which clearly states that the lessee may terminate the arrangement at any time. There is no language in the contract that requires or even suggests that the lessor is obligated to pay the full term of the contract.

Without any requirement to pay throughout the contract and with the corresponding right to terminate the contract at any time, we must find, as did the trial court, that under the facts and the language of the contract, the transaction was a lease and not a sale.

Affirmed.

HICKMAN, J., concurs.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. I would affirm under Rule 9 of the Arkansas Supreme Court Rules. The agreement was not abstracted, and I cannot say whether it is a sale or a lease.

JOHN I. PURTLE, Justice, dissenting. The instrument in question clearly reflects a sale and is therefore usurious. It looks like a sale; it sounds like a sale; it has all of the attributes of a sale.

The appellee admitted that at the end of the lease period the property would belong to the lessee, provided she paid him $1.00. This amount was not mentioned anywhere in the contract. Obviously, neither party anticipated that these items were to be

returned to the "seller" or "lessor" upon the termination of the contract.

The instrument in question provided that if the appellant made the total payments on her refrigerator she would have paid about $930.00. She had paid roughly $700.00 at the time she stopped making payments. The cash price of the refrigerator was listed at $600.00. The cash price of the microwave was $250.00; she paid $190.00 on the agreed price of $400.00. The duration of the contract was for fifty-two weeks on the refrigerator and forty weeks on the microwave. This transaction clearly was a sale and was consequently usurious.

The transfer instruments in this case provided that, at the end of the payment schedule, the title to the property would be transferred to the appellant. I believe that fact alone is sufficient to warrant a holding that this was a sale and not a lease. This factor appears to have been of particular significance in our decisions in *Hill* v. *Bentco Leasing, Inc.,* 288 Ark. 623, 708 S.W.2d 608 (1986), and *Bell* v. *Itek Leasing Corp.,* 262 Ark. 22, 555 S.W.2d 1 (1977).

The instrument of agreement between the parties provided that the lessee was responsible for the loss, theft, or destruction of the property from any and all causes whatsoever. The purchaser was obligated to pay the full price, even if the property were destroyed by an act of God. Also, if the property were damaged to an extent less than its full value, the agreement provided that the renter agreed to pay the owner for partial damage or destruction to the property.

The majority opinion employs the test of Professor Peter Coogan to determine whether this is a lease or sale. Professor Coogan states:

> Where the lessee has agreed to pay an amount substantially equal to the value of the goods of which he is to become the owner (or has the option to become the owner), the parties have entered into a conditional sale agreement.

The transaction at issue in this appeal could not be more accurately described than by these words of Professor Coogan.

The majority also apply the following three point test to

determine whether a transaction is a sale:

> (1) There must be an agreement by the lessee to pay the lessor a set amount; (2) such amount must be equivalent to the value of the leased goods; and (3) the lessee must become the owner or have the option to become the owner of the leased goods.

If any one of these elements is lacking, the lease is not a financing agreement but a true lease.

None of these elements is lacking in the case before us. There was an agreement to pay a stated amount; that amount was equivalent to the value of the goods; the lessee was to become the owner at the end of the payment period. This instrument meets all three of the above requirements. In keeping with the rationale of *Hill* v. *Bentco* and *Bell* v. *Itek*, I see no reason why a sale should not be called a sale.

I would reverse and remand.