**In re Anthony TAYLOR, Debtor.**

**Bankruptcy No. 90–40831M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

June 13, 1991.

Phil Shoffner, Searcy, Ark., for debtor.

A.L. Tenney, N. Little Rock, Ark., trustee.

Frederick S. Wetzel, III, Little Rock, Ark., Attorney for Fastway, Inc.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On April 11, 1990, Anthony Taylor (debtor) filed a petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. The debtor filed his proposed plan of reorganization with the petition. On May 23, 1990, Fastway, Inc., (Fastway) objected to confirmation of the debtor's plan, and a confirmation hearing was held on June 18, 1990. At the hearing, the debtor and Fastway agreed to submit the objection to the Court on written stipulations.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in the case.

The debtor and Fastway entered into three[1] separate agreements involving items of personal property. The debtor alleges that the agreements represent the sale of personal property. The debtor's plan classifies Fastway's claim as a secured claim in the amount of $400.00 and as an unsecured claim in the amount of $600.00. The plan proposes to pay Fastway's secured claim in full, plus 12% interest, in 36 equal installments of $13.29 and proposes to pay Fastway's unsecured claim pro rata.

Fastway objects to the debtor's plan and alleges that the agreements are unexpired

---

1. The parties stipulated at the hearing that there were three contracts; however, only one contract was attached to the written stipulation. Fastway, in its objection to confirmation, argues that its total claim under the three contracts is $3,376.86. The debtor's plan provides that Fastway's total claim is only $1,000.00. Since the stipulation did not have two out of the three leases attached, the issue of the amount due is not determined in this opinion.

leases of personal property, which the debtor must assume or reject pursuant to 11 U.S.C. § 365.

The parties stipulated as follows:

1. The contract executed by Jett TV & Video Rental, the predecessor in interest of Fastway and the debtor, Anthony Taylor, is attached as Exhibit "A".

2. Debtor was a former employee of Fastway and leased the property described on Exhibit "A" ("the property") while he was an employee.

3. Fastway owns the property described on Exhibit "A".

4. Fastway pays all personal property taxes assessed against the property.

5. Fastway is responsible for the maintenance and repair of the property.

6. Debtor ceased making rental payments on Exhibit "A" on March 31, 1990. No subsequent payments have been made by debtor to Fastway.

7. Fastway's objection to confirmation to debtor's plan is based on debtor's treatment of Exhibit "A" as a purchase of the property instead of assuming or rejecting Exhibit "A" pursuant to 11 U.S.C. § 365.

The agreements entered into by the parties provide, in pertinent part, as follows:

| 3. RENTAL RATES, CHARGES AND FEES: | | MONTHLY RATE | | WEEKLY RATE |
|---|---|---|---|---|
| ONE RENTAL PAYMENT | (A) | 45.95 | (E) | 12.95 |
| WAIVER FEE. . . | (B) | 4.00 | (F) | 1.00 |
| SALES USE TAX | (C) | 2.30 | (G) | .65 |
| TOTAL REGULAR RENTAL PAYMENT | (D) | 52.25 | (H) | 14.60 |

. . . .

TOTAL TERM: Wks 104 Mos 24

. . . .

5. TERM OF RENTAL and ADDITIONAL CHARGES. This rental is for 24 [sic] and expires 1–92. When this rental is renewed, your first Renewal Payment is due on 1–20–90. You are not obligated to renew this agreement after the first rental period. You may renew this agreement only if you are in compliance with its terms, by delivering a regular rental payment (shown above) to us before the end of the rental period. WE DO NOT HAVE A GRACE PERIOD FOR LATE PAYMENTS and you must make payment IN ADVANCE to continue using the property. THIS RENTAL TERMINATES AUTOMATICALLY UPON YOUR FAILURE TO PAY THE RENEWAL PAYMENT....

. . . .

7. TOTAL WEEKLY OR MONTHLY RENTAL WITH OWNERSHIP OPTION. You have the OPTION TO OWN this property and to exercise that option you must pay one of the following: WEEKLY RENTAL (item 3E) time 104 WEEKS, for a TOTAL of $1,346.80 or MONTHLY RENTAL (item 3A) time 24 MONTHS for a TOTAL OF $1,102.80, these amounts DO NOT include Sales or Use Tax or other charges described in item 5 or item 10, or other One–Time Fees indicated in item 4. You are not obligated to pay this amount; but if you renew the agreement for the above number of weeks or months, we will give you title to the property. You will NOT own this property during the term IF YOU DO NOT MAKE ALL THE PAYMENTS and until the TOTAL Payments necessary to acquire ownership are satisfied. You can obtain ownership other ways, see item 8 below. Since this is a Rental for a Weekly or Monthly Rental of the property only, you are obligated to make only One Rental Payment.

8. CASH PURCHASE OPTION: If you have complied with all the terms of this agreement, and it is in effect, you can buy the property. The purchase price will be computed as follows: TOTAL OF PAYMENTS (item 7) LESS PAYMENTS YOU HAVE ALREADY PAID (not including Waiver or other Fees) MULTIPLIED BY 50%. This is the Cash Purchase Price to which current SALES TAX must be added. This option to purchase is good only during that period of time arrived at by multiplying the number of weeks or MONTHS BY 2/3rds (67%) as such weeks and/or months are shown in item 7. The CASH PURCHASE PRICE during any other period is the balance of the rental payments as shown in item 7. You agree that the

CASH PURCHASE PRICE is the fair market value of rented property.

. . . .

10. OPTIONAL WAIVER OF LIABILITY: Yes X No (check one) Check YES (above) if you have paid all regular Rental Payment(s) and Waiver Fee(s) (3B F J) and are not in default under any other terms of this Rental Agreement. Owner will assume all risk of loss for damage to or destruction of the property, (including fire, flood, tornado and other acts of God). This does not cover intentional damage done by you, by others or by animals. This Waiver Fee does not cover loss by Theft or Mysterious Dissappearance. If you do not pay for this Waiver Fee, then you are liable for the Property as explained in item 11 below. THE RENTER UNDERSTANDS THAT THE WAIVER FEE DOES NOT REPRESENT THE PURCHASE OF INSURANCE ON THE PROPERTY BUT ADDITIONAL COMPENSATION TO INDUCE OWNER TO WAIVE LIABILITY FOR DAMAGE TO OR LOSS OF THE PROPERTY FOR THE ACTS SET FORTH ABOVE.

11. LOSS/DAMAGE INSURANCE: You do not have to carry insurance on the property. However, we do not carry insurance on the property, and you are responsible for its safety until it is returned to US [Fastway]. You are fully responsible for loss or destruction of the property from all causes, including but not limited to Theft, Vandalism, Malicious Mischief or Mysterious Dissappearance. In such event or if you fail to return the property to US [Fastway] when the Lease/Rental terminates, you agree to pay US [Fastway] immediately the "Full Value" of the property. "Full Value" is the Purchase Price as defined in item 8.

12. MAINTENANCE: We will maintain the property in good working order during the rental period. But you must bring the property to US [Fastway] for any maintenance or repairs. We reserve the right to exchange property for like kind and value if, in our opinion the repairs are too costly. We will not be responsible for the cost of unauthorized repairs done by others. If you choose to exercise your Purchase Option (see item 8), the merchandise will be sold to you "Where is, As is".

13. TERMINATION AND DEFAULT: You are not obligated in any way to renew this agreement or to buy the property. You can terminate this agreement by providing for the immediate return of the property to US [Fastway]. YOU AGREE TO PAY RENT UNTIL THE PROPERTY IS RETURNED TO US [FASTWAY] OR UNTIL YOU OWN IT as stated in this agreement. We may notify you of termination either in writing or orally. If you fail to return the property, you understand you will be responsible for the amount set forth in item 8.

14. EQUITY: You understand that WE own the property until you buy it or get ownership as stated in this agreement. During the rental term, YOU DO NOT HAVE ANY OWNERSHIP INTEREST IN THE PROPERTY AT ALL, AND YOU DO NOT HAVE THE RIGHT TO A REFUND OF ANY LEASE PAYMENTS WHEN THIS AGREEMENT IS TERMINATED. We will pay any personal property tax on the property.

15. LOCATION OF PROPERTY: You agree to keep the property at the address shown above. If you remove the property without our written permission we have the right to terminate this agreement and immediate right to possession of the property.

16. RETURN OF PROPERTY ON TERMINATION: If this agreement is terminated for any reason, you agree to make arrangements with us immediately for possession of the property. YOU AGREE TO PAY US [FASTWAY] RENT AND OTHER CHARGES THAT YOU OWE WHEN THE PROPERTY IS RETURNED (see item 5).

17. ASSIGNMENT: We may sell, transfer, or assign this lease, HOWEVER, YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, PAWN, SUB-

LEASE, OR IN ANY WAY ENCUMBER THE LEASED/RENTED PROPERTY.

18. REIMBURSEMENT OF COST: If you do not keep this agreement, in addition to other charges you may owe US [Fastway], you will have to pay for all reasonable cost we incur to obtain possession of our property.

19. OUR RIGHTS TO ENTER AND TAKE POSSESSION: If you default under this lease, we have the right to take possession of the property. YOU AGREE TO INDEMNIFY US [FASTWAY] FOR ALL COSTS, EXPENSES AND DAMAGES, INCLUDING REASONABLE ATTORNEY'S FEES, OCCURRING DIRECTLY OR INDIRECTLY FROM OR RELATED TO THE TAKING POSSESSION OF SAID PROPERTY CAUSED BY YOUR FAILURE TO VOLUNTARILY SURRENDER THE PROPERTY, as permitted by State Law.

20. DAMAGE TO PERSONS OR PROPERTY: You understand that we will not be responsible for any loss of or damage to any person or property arising out of the use of this property.

21. FORBIDDEN ACTS: YOU MAY NOT SELL, MORTGAGE, PAWN, PLEDGE, ENCUMBER OR DISPOSE OF THE PROPERTY OR MOVE IT FROM THE RESIDENCE ADDRESS SHOWN ABOVE. If you do, You'll have breached this lease, and you'll be liable under applicable State Law.

 The determination of whether the agreements represent sales or leases of personal property will resolve the issue of how Fastway's claim must be treated in the chapter 13 plan. If the agreements are determined to represent sales of personal property, the debtor must propose to pay Fastway the present value of its collateral and treat the remainder of Fastway's claim as an unsecured claim. *See* 11 U.S.C. § 1325(a). If the agreements are determined to represent unexpired leases of personal property, the debtor must either assume or reject the leases. If the leases are assumed, the debtor's plan may not be confirmed unless the debtor "(A) cures, or provides adequate assurance that [he] will

promptly cure, such defaults; (B) compensates, or provides adequate assurance that [he] will promptly compensate [Fastway] ... for any actual pecuniary loss to [Fastway] resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1). *See In re Urbanco, Inc.*, 122 B.R. 513 (Bankr.W.D.Mich.1991); *In re Wallace*, 122 B.R. 222 (Bankr. D.N.J.1990). Therefore, performance under the assumed lease is treated as though the bankruptcy had never occurred. *In re Rachels Indus., Inc.*, 109 B.R. 797 (Bankr. W.D.Tenn.1990).

 To determine whether an agreement represents an installment sales contract or a "true" lease, the objective intent of the parties must be considered. *In re Yost*, 54 B.R. 818 (Bankr.W.D.Ky.1985). The contents of the agreements, as well as the factual setting of the transaction must be considered when determining intent. *Watkins v. Air Vermont (In re Air Vermont, Inc.)*, 44 B.R. 440, 443 (Bankr.D.Vt. 1984). Courts look at the substance of the transaction and are not necessarily bound by so-called "lease terminology." *Bell v. Itek Leasing Corp.*, 262 Ark. 22, 24, 555 S.W.2d 1, 2 (1977).

 The term "lease" is not defined in the Bankruptcy Code; therefore, the agreements must be construed under the provisions of state law. Ark.Code Ann. § 4-1-201 provides guidance for determining the distinction between the nature of a security interest and the nature of a "true" lease as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods, notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a "security interest".... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with

the terms of the lease, the lessee shall become, or has the option to become, the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Arkansas courts have decided a number of cases involving the issue of whether an agreement is a sale or a lease and have identified a number of factors that are significant. These factors include:

(1) whether or not the lessor is a financing company (*Bell v. Itek Leasing Corp.*, 262 Ark. at 24, 555 S.W.2d at 2);

(2) whether it is the lessor or lessee who must bear the risk of loss (*Id.* at 25, 555 S.W.2d at 3);

(3) whether the lessor, upon the lessee's default, has any remedies that would be available to a conditional seller or to a mortgagee for such a default (*McIlroy, Bank & Trust v. Seven Day Builders*, 1 Ark.App. 121, 126, 613 S.W.2d 837, 839 (1981));

(4) whether the agreement provides for the execution of financial statements or such other instruments to protect the lessor's interest in the property (*Bell v. Itek Leasing Corp.*, 262 Ark. at 25, 555 S.W.2d at 3);

(5) whether or not there is an absence of any appreciable residual in the lessor at the end of the lease (*Hill v. Bentco Leasing, Inc.*, 288 Ark. 623, 625, 708 S.W.2d 608, 609 (1986);

(6) whether the lessee is obligated to make payments equivalent to the purchase price of the property (*Crumley v. Berry*, 298 Ark. 112, 114, 766 S.W.2d 7, 10 (1989)); and

(7) whether the agreement requires a down payment or payments in advance (*McIlroy, Bank & Trust v. Seven Day Builders*, 1 Ark.App. at 126, 613 S.W.2d at 839; *Standard Leasing Corp. v. Schmidt Aviation*, 264 Ark. 851, 853, 576 S.W.2d 181, 183 (1979)).

Of these factors, the Arkansas Supreme Court stated that one is perhaps more dispositive of the transaction than the others:

When considering whether a particular agreement constitutes a lease or a sale, we look at a number of factors to determine the nature of the contract. *See Hill v. Bentco*, 288 Ark. 623, 708 S.W.2d 608 (1986); *Bell v. Itek*, 262 Ark. 22, 555 S.W.2d 1 (1977). The agreement in this case includes one particular factor that would strongly favor an interpretation of a sale: the option to buy the items at the end of a specified period of weeks for no additional cost, or in other words, the "absence of any appreciable residual in the lessor at the end of the lease." *Hill v. Bentco, supra.* This factor was significant in both *Hill v. Bentco, supra,* and *Bell v. Itek, supra.*

Still, as noted in *Hill*, all factors must be considered and looking further in this case, what is noticeably absent is any obligation on the part of the lessee to make payments equivalent to the purchase price of the items, an obligation present in both *Hill v. Bentco* and *Bell v. Itek*. Under the contract, Ms. Crumley was free to terminate the arrangement at the end of the first week, or any subsequent week. There was no obligation to continue payments for the specified periods. This course of action was completely optional with Ms. Crumley. Is such an obligation necessary to finding a contract for sale?

We have not previously considered this question, but from an examination of other jurisdictions and authorities, it appears that the greater weight of authority agrees that when the lessee has the right to terminate at any time and is under no obligation to make payments equivalent to the purchase price of the leased goods, it will generally preclude a finding that the arrangement is a sale and not a lease.

*Crumley v. Berry*, 298 Ark. at 113–14, 766 S.W.2d at 8–9.

█ In the instant case, the following provisions of the agreement support a finding that the agreement is a sale: (1) the rental payments include sales tax; (2) the rental payments are made in advance; (3) the title of the property is transferred to the lessee after all payments under the agreement are made; (4) the cash purchase

price is provided for in the agreement; and (5) the lessee bears the risk of loss if the property is damaged. Provisions of the agreement that support a finding that the agreement is a lease include: (1) the lessor pays personal property taxes; (2) the lessor is responsible for all repairs and maintenance; (3) the lessee is not obligated to execute financing statements pursuant to the Uniform Commercial Code; (4) the lessor can repossess the property upon the lessee's default, but cannot accelerate payments; and (5) the lessee can terminate the agreement at any time without further obligation to pay future payments.

Act 490 of the Arkansas legislature (The Rental Purchase Act), now codified at Ark. Code Ann. §§ 4–92–101 to –107 (Supp.Vol. 2 1989), has attempted to resolve the difficult issue of whether an agreement is a sale or a lease with regard to merchandise used by a consumer "for personal, family, household or business purposes." Ark. Code Ann. § 4–92–102(7) defines a rental-purchase agreement as one that is:

> for an initial period of four (4) months or less that is automatically renewable with each payment after the initial period, but does not obligate or require the consumer to continue leasing or using the merchandise after the initial period and that permits the consumer to become the owner of the merchandise, but does not obligate the consumer to purchase or become the owner of the merchandise.

Ark.Code Ann. § 4–92–104, referring to the definition cited above, states:

> An agreement which conforms with the definition as set forth in § 4–92–102(7) shall be a true lease and shall not constitute a credit sale, retail installment contract, agreement, obligation, or any other type of credit sale financing device, nor shall it create a security interest as that term is defined in § 4–1–201(37). Until the lessor transfers title to the merchandise to the consumer, the relationship of the parties to a rental-purchase agreement shall be that of a lessor and lessee and not that of a seller and buyer, and title to the merchandise shall remain vested with the lessor.

Ark.Code Ann. § 4–92–105 enumerates provisions prohibited and required in a rental-purchase agreement. The agreements between the debtor and Fastway comply, in every respect, with the provisions of Ark. Code Ann. § 4–92–105.

Therefore, the agreements between the debtor and Fastway are determined to be leases, and Fastway's objection to confirmation is sustained. The debtor is granted twenty days to file a modified plan consistent with this order.

IT IS SO ORDERED.