In re Debra Denise SPEARS, Debtor.

RENT–A–CENTER, INC., a corporation, Petitioner,

v.

Debra Denise SPEARS, Respondent.

Bankruptcy No. 91–31383.

United States Bankruptcy Court, S.D. Illinois.

April 21, 1992.

Mark Samila, for Debra D. Spears, debtor.

Jay R. Burns, Allen H. Collins, for Rent-A-Center.

James W. McRoberts, Chapter 13 Trustee.

## OPINION

BASIL H. COUTRAKON, Bankruptcy Judge.

Before the Court is the Objection filed herein by Rent–A–Center ("RC") to Confirmation of Debtor's Chapter 13 Plan. The facts in this matter are as follows:

Within the year prior to the filing of her Petition herein, Debtor entered into two agreements with RC. The first agreement, entered into on May 24, 1991, was for a washer and dryer. Under the terms of the agreement, Debtor would make weekly rental payments for use of the property. Debtor would become the owner of the property upon satisfaction of one of the following two conditions: (i) payment of 78 weekly rental payments, or (ii) payment of 60% of the remaining renewal payments in a lump sum. The second agreement, entered into on September 30, 1991, was for a television, stereo and home entertainment system. Similarly, the agreement called for Debtor to make weekly rental payments for use of the property. Debtor would become the owner of the property subject to this agreement upon satisfaction of one of the following two conditions: (i) payment of 56 weekly rental payments, or (ii) payment of 60% of the remaining renewal payments in a lump sum.

Both agreements provided that should the Debtor cease making weekly rental payments, RC would be immediately entitled to return of the property. The agreements provided, however, that the Debtor could reinstate the agreement subsequent to a default under certain specified terms and conditions. Additionally, both agreements provided that Debtor was liable for damage to the rented goods beyond ordinary wear and tear. Debtor and RC entered into a liability waiver provision excusing Debtor from liability for damage to the goods due to fire, windstorm, flood, smoke, lightning, or theft.

The Debtor made payments under both rental agreements through November 12, 1991. On December 12, 1991, RC filed a replevin action in state circuit court, alleging Debtor's breach of the subject agreements. On December 13, 1991, Debtor filed her Chapter 13 Petition in Bankruptcy.

In her Petition, Debtor scheduled RC as a secured creditor under both agreements. Under the first agreement, Debtor listed RC as a creditor with a claim in the amount of $1,400.00, secured by a washer and dryer. The collateral was valued, according to Debtor's Petition, at $370.00. Under the second agreement, Debtor listed RC as a creditor with a claim in the amount of $1,567.44, secured by the television, stereo, and entertainment center. The collateral was valued by Debtor at $610.00.

RC filed an Objection to confirmation the Plan, alleging that Debtor had no ownership interest in any of the property subject to the two agreements with RC. Debtor argues that under Illinois law, the agreements between herself and RC are actually secured sales agreements, with RC as the secured party. For the reasons set forth below, this Court finds that the agreements are true leases and not secured sales agreements, contrary to the assertions of the Debtor.

 Whether or not a security interest in property exists and to what extent it is conveyed is governed by the laws of individual states. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In Illinois, Uniform Commercial Code Section 1–201(37) governs the determination of whether a lease is intended to convey a security interest. Section 1–201(37) defines "security interest" as:

> ... an interest in personal property or fixtures which secures payment or performance of an obligation.... Whether a lease is intended as security is to be

determined by the facts of each case; however, (a) the inclusion of an option to purchase does not itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

In *In re Marhoefer Packing Co., Inc.*, 674 F.2d 1139 (7th Cir.1982), the court stated that "(t)he primary issue to be decided in determining whether a lease is 'intended as security' is whether it is in effect a conditional sale in which the 'lessor' retains an interest in the 'leased' goods as security for the purchase price." 674 F.2d at 1142. The *Marhoefer* court also stated that where a lessee is contractually bound to pay rent over a set period of time at the conclusion of which the lessee automatically or for minimal consideration becomes the owner of the leased item, the transaction is a conditional sale under subparagraph (b) of 1–201(37). However, the court further stated the conclusive presumption that the lease is a conditional sale "applies only where the option to purchase for nominal consideration necessarily arises upon compliance with the lease. (citation omitted). It does not apply where the lessee has the right to terminate the lease before that option arises with no further obligation to continue paying rent. (citation omitted). For where the lessee has the right to terminate the transaction, it is not a conditional sale." 674 F.2d at 1142–1143.

In the case at bar, Debtor had the right to terminate the transaction at the end of every week. Both parties obviously contemplated the possible exercise of this option at the time of execution of the agreement. There would have been no penalties imposed upon Debtor for failure to renew the lease beyond the first week. While Debtor in the case at bar had the option to purchase the subject property at the end of each week for an amount equal to 60% of the remaining renewal payments, such a sum could hardly be considered "nominal" under the *Marhoefer* test, which states:

"(w)hile it is difficult to state any bright line percentage test for determining when an option price could properly be considered nominal as compared to the fair market value of the leased goods, an option price ... which amounts to fifty percent of the fair market value, is not nominal by any standard." 674 F.2d at 1144.

The "lump sum" purchase option under the agreements subject hereto clearly contemplates a purchase price at least equal to the fair market value of the product(s) subject to each agreement. As the duration of the lease is extended, the value of the property decreases, and the "lump sum" purchase option takes this fact into account. Therefore, any option purchaser under such an agreement would, in actuality, be paying no less than fair market value for the used item subject to the agreement.

Therefore, the transaction is not a conditional sale by presumption. Further analysis is required to determine the true nature of the agreement.

The *Marhoefer* opinion noted that although Section 1–201(37) states that "(w)hether a lease is intended as security is to be determined by the facts of each case," the statute provides no criteria for making such an evaluation. The court then determined that the following five factors are indicative of the intended purpose of the lease: (1) the total amount of rent the lessee is required to pay under the lease, (2) whether the lessee acquires any equity in the leased property, (3) the useful life of the leased goods, (4) the nature of the lessor's business, and (5) the payment of taxes, insurance and other charges normally imposed on ownership. *Id.* This Court will apply these facts to the facts found in the case at bar.

(1) Debtor was never obligated to pay the full purchase price for the items under the two agreements. The duration of each lease was one week, and one week's rent constituted only a small portion of the purchase price under either of the available purchase options.

(2) Debtor never acquired any equity in the leased property. Any time prior to expiration of the two agreements, Debtor's voluntary or involuntary termination of the lease would yield her nothing by way of an equity interest in the subject property.

(3) The useful life of the property subject to both leases exceeded the initial one-week term of either lease. "An essential characteristic of a true lease is that there be something of value to return to the lessor after the term." *Id.* In the case at bar, there is no doubt that the property subject to the agreement retains most of its value from week to week.

(4) The nature of RC's business includes both rental and the eventual sale of rental goods.

(5) While the Debtor would be liable under the subject agreements for damages beyond wear and tear, this is indicative "less of the true character of the transaction than the strength of the parties' respective bargaining positions." *Id.* at p. 1146.

In *Royce, Inc. v. Powers*, 138 B.R. 916 (C.D.Ill., 1992), the Court applied the *Marhoefer* analysis to a "rent-to-own" agreement similar to those at issue herein. The court reached the same conclusion as reached herein. For the reasons stated above, this Court finds that the "rent-to-own" agreements subject to these proceedings are, in fact, true leases and not secured purchase agreements.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. See written Order.

### ORDER

For the reasons set forth in an Opinion entered on the 15th day of April, 1992;

IT IS THEREFORE ORDERED that:

1. The Objection to Confirmation of Plan filed herein by Rent–a–Center is sustained.

2. The Plaintiff is given 20 days from the entry of this Order to amend her Chapter 13 Plan consistent with this Order.