**In re Farrell Douglas COPELAND and Janet Lanell Copeland, Debtors.**

**Bankruptcy No. 98–31598M.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 8, 1999.

[black box]

Joe C. Barrett, Jonesboro, AR, for debtor.

Gregory Veach, Carbondale, IL, for Cook Sales, Inc.

David Coop, Chapter 13 Trustee.

## ORDER

JAMES G. MIXON, Chief Judge.

On November 27, 1998, Farrell and Janet Copeland ("Debtors") filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. The Debtors' proposed plan characterizes Cook Sales, Inc. ("Cook") as a secured creditor with a total claim of $3441.93 secured by a security interest in a portable shed valued at $2000.00. The plan proposes to pay $2000.00, the secured portion of the claim, and interest accruing at the rate of 10% per annum in 39 monthly payments of $65.00.

Cook filed an objection to confirmation alleging that the portable building was leased to the Debtors and that the Debtors' plan must assume or reject the lease or otherwise comply with the provisions of 11 U.S.C. § 365. A hearing was conducted on April 23, 1999, in Jonesboro, Arkansas, and the matter was taken under advisement. The proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and this Court has jurisdiction to enter a final judgment in this case.

## FACTS

The facts are not in dispute. Cook is an Illinois corporation with its principal place of business in Union County, Illinois. On July 7, 1998, Cook and Janet Copeland[1] entered into a written transaction styled "Portable Warehouse Lease." The lease calls for an initial payment of $181.03, consisting of the following:

| | | |
|---|---|---|
| 1. | Monthly lease payment | $107.11 |
| 2. | Sales tax | $ 3.92 |
| 3. | Tentative pick up charge | $ 70.00 |
| | | $181.03 |

Thereafter, the lease payment is calculated as follows:

| | |
|---|---|
| Base Monthly Payment | $107.11 |
| Monthly Sales Tax | $ 3.92 |
| | $111.03 |

The lease term is for 36 months and the $70.00 tentative pick up charge is refundable without interest at the successful conclusion of the lease term. The lessee has the option to terminate the lease at any time without further obligation to the lessor. The lessee has the following purchase option:

In the event the Lessee pays 12 or more monthly lease payments and the Lessee is not in default, Lessee shall have the exclusive right and option, at any time thereafter while such lease is in force, to purchase the leased property, for cash in the amount of $2,125.00; 55% of all previously made rental payments (but not sales tax and insurance included in payments) will apply toward the purchase price. Sales tax will be taken out of each rental payment on the equity amount (55%) or ⅟₃₆th of total sales tax due each month. **(If you reside in the State of Missouri, sales tax will be taken out of each rental payment based on the beginning receivable. When exercising the option to purchase, sales tax will be charged on the remaining principal balance.)**

(Pl.'s Ex. 1.)

The lessee is liable for the risk of loss of the property and is required to maintain a property damage insurance policy with the lessor designated as loss payee and with a deductible not greater than $100.00. The lessee is also liable to pay any applicable

---

1. For convenience, all references hereinafter will be to the Debtor, Janet Copeland, even though this is a joint case.

personal property taxes. The building is a wooden storage building and has an anticipated useful life much beyond the term of the lease. Michael Miller ("Miller"), General Manager of Cook, testified that about 54% of Cook's sales are structured as leases and the rest are cash sales. He stated that Cook does not finance sales of its products in any other way. The Debtor made the initial payment and three monthly payments in late 1998 and filed for bankruptcy protection on November 27, 1998.

The Debtor contends that the transaction, although characterized as a lease, is a disguised sale of property and may be dealt with as such in a chapter 13 plan. Cook argues that the transaction is a true lease governed by the provisions of 11 U.S.C. § 365.

## DISCUSSION

If the transaction is construed as a sale of personal property, the Debtor must propose to treat Cook's claim as provided in 11 U.S.C. § 1325(a)(4) or § 1325(a)(5), depending on the facts of the case. If the transaction is a true lease and the Debtor desires to keep the property, then the Debtor must assume the lease, cure all defaults, and perform the lease according to its terms and in compliance with 11 U.S.C. § 365. *In re Sellers*, 26 U.C.C.Rep.Serv.2d 42 (Bankr.N.D.Ala. 1994); *In re Taylor*, 130 B.R. 849, 853 (Bankr.E.D.Ark.1991).

 To determine whether an agreement represents a sale or a lease, the Bankruptcy Court must look to applicable state law. *Speck v. First Nat'l Bank (In re Speck)*, 798 F.2d 279, 280 (8th Cir.1986); *In re Architectural Millwork, Inc.*, 226 B.R. 551 (Bankr.W.D.Va.1998); *All Am. Mfg. Corp. v. Quality Textile Screen Prints, Inc. (In re All Am. Mfg. Corp.)*, 172 B.R. 394, 397 (Bankr.S.D.Fla.1994).

Several decisions by Arkansas courts and bankruptcy courts have construed Arkansas law to decide whether an agreement is a sale or a lease. *See, e.g., In re Taylor*, 130 B.R. 849, 854 (Bankr.E.D.Ark. 1991); *Delsam v. Glenn (In re Glenn)*, 102 B.R. 153 (Bankr.E.D.Ark.1989); *In re Brown*, 82 B.R. 68, 71–72 (Bankr.W.D.Ark. 1987); *Crumley v. Berry*, 298 Ark. 112, 766 S.W.2d 7, 8–9 (1989); *Hill v. Bentco Leasing, Inc.*, 288 Ark. 623, 628, 708 S.W.2d 608, 610–11 (1986); *McIlroy Bank & Trust v. Seven Day Builders*, 1 Ark.App. 121, 126, 613 S.W.2d 837, 838–39 (1981); *Bell v. Itek Leasing Corp.*, 262 Ark. 22, 24–25, 555 S.W.2d 1, 2–3 (1977). In these cases, the courts focused on a so-called "laundry list" of factors including whether the lessor is a financing company, who bears the risk of loss, the remedies available to the lessor upon the lessee's default, the presence or absence of any residual value in the lessor at the end of the lease, and whether the lease payments are equivalent to the purchase price of the property. *In re Taylor*, 130 B.R. 849 (Bankr.E.D.Ark.1991) (citing cases using the factors above to distinguish between a sale and a lease).

Arkansas adopted revised section 1–201(37) of the Uniform Commercial Code in 1993. The revised section, like is predecessor, provides that whether a transaction is a true lease or a sale is to be determined by the facts of each case. Ark.Code Ann. § 4–1–201(37) (Michie Supp.1997). This statement is immediately qualified in subsection (a) by a recitation of circumstances that create a sale and security interest as a matter of law. *In re All Am. Mfg. Corp.*, 172 B.R. at 397; *Addison v. Burnett*, 41 Cal.App.4th 1288, 49 Cal.Rptr.2d 132, 135 (1996). The section provides that if the lease is not subject to termination by the lessee and one of four additional conditions also exists, the transaction is a sale with a security interest as a matter of law.[2] *In re*

---

2. The four conditions are:
 (a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

 (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

*Lerch,* 147 B.R. 455 (Bankr.C.D.Ill.1997); *In re All Am. Mfg. Corp.,* 172 B.R. at 397; 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30–3 at 18–20 (4th ed.1995) (hereinafter "White and Summers").

■ Revised section 1–201(37) also states five factors that are insufficient, by themselves, to indicate that a transaction is a sale with a security interest rather than a lease.[3] The revision of section 1–201(37), with its detailed lists of factors, demonstrates a shift away from focusing on the intent of the parties and towards an emphasis on the economic realities of the transaction. *In re Yarbrough,* 211 B.R. 654 (Bankr.W.D.Tenn.1997) (citing U.C.C. § 1–201(37) official cmts.); Laura J. Paglin, Note, "U.C.C. Article 2A: Distinguishing Between Leases and Secured Sales," 63 St. Johns L.Rev. 69, 76 (Fall 1988). Some courts have observed that revised section 1–201(37) was not intended as a substantive change in the law but an attempt to clarify "the confusion in the existing law." *In re Bumgardner,* 183 B.R. 224, 229 (Bankr.D.Idaho 1995); *Carlson v. Giacchetti,* 35 Mass.App.Ct. 57, 616 N.E.2d 810, 813 (1993).

■ The most significant factor in determining whether a transaction is a lease or a sale and security interest is whether the lessor has retained a meaningful resid-

ual interest in the goods at the end of the lease term. *In re Allen,* 174 B.R. 293, 295 (Bankr.D.Or.1994); *In re Zaleha,* 159 B.R. 581, 585 (Bankr.Idaho 1993) (quoting *Woodson v. Ford Motor Credit Co. (In re Cole),* 100 B.R. 561, 564 (Bankr.N.D.Okla. 1989)); *Addison v. Burnett,* 41 Cal.App.4th 1288, 49 Cal.Rptr.2d 132, 136 (1996); *Kimco Leasing, Inc. v. State Board of Tax Commissioners,* 656 N.E.2d 1208 n. 14 (Ind.Tax Ct.1995) (citing *In re Zaleha,* 159 B.R. at 584); *White & Summers* § 30–3 at 24–25. If a lessor cannot reasonably expect to receive back anything of value at the end of the lease term, then there is no residual value in the lessor and the transaction may be a sale and security interest. *Addison,* 49 Cal.Rptr.2d at 137.

Examining residual value and other applicable factors under the statute, the Bankruptcy Court for the Southern District of Illinois has determined that this exact lease is a true lease. *See. In re McHughs,* No. BK 94–40176 (Bankr. S.D.Ill., filed Oct. 4, 1994). In an unpublished opinion, Judge Kenneth Meyer found that the lessee's right to terminate neutralized the effect of the option to purchase for nominal value, a factor usually indicative of a conditional sale. The court also found that where, as here, the useful life of the property exceeds the length of the term of the lease, there was residual value to return to the lessor at the expira-

---

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration upon compliance with the lease agreement, or
(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement. Ark.Code Ann. § 4–1–201(37)(a)–(d) (Michie Supp.1997).

3. The factors that alone do not indicate a sale and security interest are:
(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or greater than the fair market value of the goods at the time the lease is entered into,
(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, fil-

ing, recording, or registration fees, or service or maintenance costs with respect to the goods,
(c) the lessee has an option to renew the lease or to become the owner. of the goods,
(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or
(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed. Ark.Code Ann. § 4–1–201(37)(a)–(e) (Michie Supp. 1997).

tion of the lease and, thus, the transaction was a true lease.[4] Furthermore, the court considered the fact that the rent paid by the lessee could exceed the purchase price which indicated a security agreement. The court found, however, that this factor was not relevant because the lease at issue allowed the lessee to purchase the building after paying only twelve months of rent, an amount substantially less than the purchase price.

■ Evidencing a sale is the fact that Cook is in the business of selling portable buildings either for cash or pursuant to the lease agreement in question. The lessee bears the risk of loss, must pay applicable taxes, must maintain insurance with the lessor as loss payee, and is responsible for maintenance and repairs to the property. Furthermore, the "rent," if paid until the conclusion of the lease term, greatly exceeds the fair market value of the property. Finally, and most significantly, the lessee has the right to purchase the property for the nominal sum of $1.00 at the conclusion of the lease term. Thus, under this Court's interpretation of the residual value test, at the end of the lease term Cook cannot reasonably expect to receive back anything of value since a lessee in all likelihood would exercise the option to own the property for only $1.00.

This case is comparable to the cases discussed in *Consumer Lease Network, Inc. v. Puckett (In re Puckett)*, 60 B.R. 223 (Bankr.M.D.Tenn.1986), aff'd, 838 F.2d 471 (6th Cir.1988). In *Puckett*, as here, the lessees' rights to terminate lacked real substance.

■ It is true that the Debtor invested little in the transaction at its inception and that Cook assumed the risk that the "sale"

would be lost if the Debtor terminated the lease. However, this transaction involved a relatively small sum of money and after only a brief period, the Debtor's investment in the building would make it economically foolish to terminate the lease. Under the economic realities test, the question is whether the lessee would be a fool not to exercise the option to purchase. "If only a fool would fail to exercise this option, then the economic reality must be a sale notwithstanding the language of the lease and option." White & Summers § 30–3 at 13–14. Cook's employee estimated that at the termination of the lease the building would have a value nearly equal to the cash price at the inception of the lease. Yet Cook's residual interest in the building at the end of the lease is valued at only $1.00, a fact Cook's employee cheerfully acknowledged at trial.[5]

However, Arkansas law governs the question presented here of whether the agreement is a lease or sale. The Arkansas cases have stated that "[w]hen considering whether a particular agreement constitutes a lease or sale we look at a number of factors...." *Crumley v. Berry*, 298 Ark. 112, 113, 766 S.W.2d 7, 8 (1989) (citing with approval *Hill v. Bentco*, 288 Ark. 623, 708 S.W.2d 608 (1986); *Bell v. Itek*, 262 Ark. 22, 555 S.W.2d 1 (1977)). Despite this statement, the Arkansas Supreme Court went on to hold in *Crumley* that the single fact that the lessee could terminate the lease precluded the finding that the transaction was a sale. *Crumley*, 298 Ark. at 114, 766 S.W.2d at 9. *Accord Delsam v. Glenn (In re Glenn)*, 102 B.R. 153, 156–57 (Bankr.E.D.Ark.1989).

Other courts and authorities also have held that a transaction is a true lease notwithstanding the other factors in the

---

4. As will be seen below, this Court's interpretation of the residual value test differs from that of Judge Meyers.

5. If this transaction is a sale and not a lease it is usurious on its face. The cash price of the building is $2125.00, whereas the lease payments for 36 months total $3997.08. This

price differential if viewed as interest calculates to a robust rate of approximately 47% per annum. The Arkansas Constitution provides that contracts for consumer loans and credit sales having a greater interest rate than 17% per annum are void as to principal and interest. Ark. Const. art. XIX, § 13(b).

case if the lessee may terminate a lease at will. *In re Yarbrough*, 211 B.R. 654, 657–58 (Bankr.W.D.Tenn.1997); *Central Rents, Inc. v. Johnson (In re Johnson)*, 203 B.R. 498, 502 (Bankr.S.D.Ga.1996) (citing *Smith v. ABC Rental Systems, of New Orleans, Inc.*, 491 F.Supp. 127 (E.D.La.1978)); *Rent–A–Center v. Spears (In re Spears)*, 146 B.R. 772, 774 (Bankr.S.D.Ill.1992) (quoting *In re Marhoefer Packing Co. Inc.*, 674 F.2d 1139, 1142–43 (7th Cir.1982)). Other courts reject the "one factor" test. *In re Sellers*, 26 U.C.C.Rep.Serv.2d 42 (Bankr.N.D.Ala.1994); *In re Barnhill*, 189 B.R. 611, 615 (Bankr.D.S.C.1992); *Rent–A–Center v. Shelby (In re Shelby)*, 127 B.R. 682, 691 (Bankr.N.D.Ala.1991); *In re Burton*, 128 B.R. 807, 814 (Bankr.N.D.Ala. 1989), aff'd, 128 B.R. 820 (N.D.Ala.1989); *In re Aguilar*, 101 B.R. 481, 483 (Bankr. W.D.Tex.1989) (quoting *Waldron v. Best TV & Stereo Rentals, Inc.*, 485 F.Supp. 718, 719 (D.Md.1979)); *Consumer Lease Network, Inc. v. Puckett (In re Puckett)*, 60 B.R. 223, 239 (Bankr.M.D.Tenn.1986) (observing that the "right to terminate" clause is unpersuasive where termination triggers an economic forfeiture).

The current version of § 2–102(37) does not require a finding as a matter of law that a transaction is a true lease based only on the fact that the lessee may terminate the lease at any time. Although the view expressed in *In re Puckett* that the right to terminate is rendered illusory by the economic reality of the transaction is particularly persuasive in this case, the Arkansas Supreme Court has acknowledged this view point but declined to adopt it. *Crumley*, 298 Ark. at 117, 766 S.W.2d at 10 (finding *Puckett* inapplicable where the lessee was not led to believe the transaction was a sale and not a lease). *Crumley* is indistinguishable from the facts in this case and is binding precedent under Arkansas law.

Therefore, applying Arkansas law, the agreement between Cook and the Debtor is determined to be a lease. Therefore, Cook's objection to confirmation is sus-tained; the Debtor has twenty (20) days to file a modified plan consistent with this Opinion.

IT IS SO ORDERED.