### In re Albert L. MACKLIN and Earlene Macklin.

**Bankruptcy No. 99–30014M.**

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

July 26, 1999.

---

Constance Grayson, West Memphis, AR, for Debtors.

Ralph Waddell, Jonesboro, AR, for Mirly Truck Sales.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

On January 7, 1999, Albert and Earlene Macklin filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. The Debtors' proposed plan characterizes Mirly Truck Sales ("Mirly") as a secured creditor with a claim of $14,000.00 secured by a lien on a 1997 Transcraft flatbed trailer valued at $14,000.00. The plan proposes to pay the secured claim in full plus interest at the rate of 9.5% per annum in installments of $294.03 per month over the five-year life of the plan.

Mirly filed an objection to confirmation, alleging that it was the owner of the 1997 Transcraft trailer; that the trailer had been leased to the Debtor, Albert Macklin,[1] for monthly lease payments of $691.00; and that the Debtor was eight months in arrears on the payments. Mirly alleged that the Debtor should be compelled to assume or reject the unexpired lease and otherwise comply with the provi-

---

**1.** All transactions involved in this case concern the Debtor Albert Macklin. "Debtor" as used hereinafter refers only to Albert Macklin.

sions of 11 U.S.C. § 365. Mirly also filed a motion for relief from the automatic stay, alleging that because the Debtors had not assumed the lease within 60 days after the date of the Order of Relief, the lease is deemed rejected pursuant to 11 U.S.C. § 365(d)(4).

A hearing was conducted on April 23, 1999, on both matters, which were taken under advisement. The proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

Mirly is a Missouri corporation doing business in Advance, Missouri. It engages in the business of selling "over the road trucks and trailers." (Tr. at 7.) The Debtor is a customer who has been in the trucking business since 1992.

Mirly does not routinely finance trucks and trailers it sells, but does assist customers in obtaining financing. The Debtor purchased a tractor from Mirly in the fall of 1996,[2] and desired to purchase the 1997 trailer in question. The Debtor was unable to obtain financing from an outside source because the Debtor was "too weak on paper for the finance companies...." (Tr. at 8.)

According to Barry Middleton ("Middleton"), sales manager for Mirly, the parties agreed that Mirly would purchase the trailer on its own credit and lease it to the Debtor for 48 months. The lease payments were to be the same as Mirly's payments to Allen Financial Corporation, which loaned Mirly the purchase money. Mirly executed a promissory note payable to Allen Financial Corporation in the sum of $33,168.00 dated October 2, 1996. The note was for a term of 48 months with payments in the sum of $691.00 per month. Mirly executed appropriate financing statements in favor of Allen Financial Corporation that were filed in the State of Missouri. Title was issued in Mirly's

name and evidenced a lien in favor of Allen Financial Corporation.

The agreement between the Debtor and Mirly was an oral agreement, with no documentation reflecting the terms. According to Middleton, the terms of the agreement with the Debtor were that the Debtor's payments to Mirly would be the same as the amount Mirly paid to Allen Financial Corporation and that at the end of the 48–month lease term the Debtor could buy the trailer for the nominal sum of one dollar ($1.00). Middleton stated that the Debtor had the ability to terminate the "lease" agreement at any time and not owe a deficiency. Macklin paid for the insurance on the trailer at the inception of the transaction but apparently Mirly paid for the insurance at some other time. As of the date of the hearing both parties had allowed the insurance to lapse.

The Debtor's understanding of the transaction was only slightly different. He stated that after his credit was denied, "Tim" or "Barry" told him they would set the purchase up on a lease-purchase plan and that if the Debtor made payments for six months, Mirly would "get you financed and ... send you a payment back and ... also drop your payments...." (Tr. at 19–20.) The Debtor also understood that at the end of the lease term the trailer would be his. The Debtor denied knowledge of any discussion with Middleton about the Debtor's right to "walk away from" the sale. (Tr. at 25.)

## DISCUSSION

If the transaction is construed as a sale of personal property, the Debtor must propose to treat Mirly's claim as provided in either 11 U.S.C. § 1325(a)(4) or § 1325(a)(5), depending on the facts of the case. If the transaction is a true lease and the Debtor wants to keep the property, then the Debtor must assume the lease, cure all defaults, and perform the lease according to its terms and in compliance

---

**2.** The tractor was financed by a third party.

with 11 U.S.C. § 365. *In re Taylor*, 130 B.R. 849, 853 (Bankr.E.D.Ark.1991).

█ To determine whether an agreement represents a sale or a lease, the Bankruptcy Court must look to applicable state law. *In re Architectural Millwork, Inc.*, 226 B.R. 551 (Bankr.W.D.Va.1998); *All Am. Mfg. Corp. v. Quality Textile Screen Prints, Inc. (In re All Am. Mfg. Corp.)*, 172 B.R. 394, 397 (Bankr.S.D.Fla. 1994).

█ Several decisions by both state and bankruptcy courts construe Arkansas law on the issue of whether an agreement is a sale or a lease. *See, e.g., In re Taylor*, 130 B.R. 849, 854 (Bankr.E.D.Ark.1991); *In re Brown*, 82 B.R. 68, 71–72 (Bankr. W.D.Ark.1987); *Crumley v. Berry*, 298 Ark. 112, 113–14, 766 S.W.2d 7, 8–9 (1989); *Hill v. Bentco Leasing, Inc.*, 288 Ark. 623, 628, 708 S.W.2d 608, 610–11 (1986); *McIlroy Bank & Trust v. Seven Day Builders*, 1 Ark.App. 121, 126, 613 S.W.2d 837, 838–39 (1981); *Bell v. Itek Leasing Corp.*, 262 Ark. 22, 24–25, 555 S.W.2d 1, 2–3 (1977). In these cases, courts focused on a so-called laundry list of factors including whether the lessor is a financing company, who bears the risk of loss, the remedies available to the lessor upon the lessee's default, the documentation regarding the presence or absence of any residual value in the lessor at the end of the lease, and whether the lease payments are equivalent to the purchase price of the property. *In re Taylor*, 130 B.R. 849, 854 (Bankr. E.D.Ark.1991) (citing cases using the factors above to distinguish between a sale and a lease). The most significant factor that determines whether a transaction is a lease or a sale and security interest is whether the lessor has retained a meaningful residual interest in the goods at the end of the lease term. *In re Allen*, 174 B.R. 293, 295 (Bankr.D.Or.1994); *In re Zaleha*, 159 B.R. 581, 585 (Bankr.D.Idaho 1993); *Kimco Leasing, Inc. v. State Bd. of Tax Commissioners*, 656 N.E.2d 1208, 1218 (Ind.Tax 1995); *Addison v. Burnett*, 41 Cal.App.4th 1288, 49 Cal.Rptr.2d 132, 136–37 (1996); 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30–3 at 18 (4th ed.1995).

Arkansas adopted revised title 4, chapter 1, section 201(37) of the Uniform Commercial Code in 1993. Ark.Code Ann. § 4–1–201(37) (Michie Supp.1997). The new section 1–201(37), like its predecessor, provides that whether a transaction is a true lease or a sale is to be determined by the facts of each case. This statement is immediately qualified in subsections (a)-(d) by a recitation of circumstances that create a sale and security interest as a matter of law. *All Am. Mfg. Corp. v. Quality Textile Screen Prints, Inc. (In re All Am. Mfg. Corp.)*, 172 B.R. 394, 397 (Bankr. S.D.Fla.1994); *Addison v. Burnett*, 41 Cal. App.4th 1288, 49 Cal.Rptr.2d 132, 135 (1996). If the lease is not subject to termination by the lessee and one of four additional conditions also exist, the transaction is a sale with a security interest as a matter of law.[3] *In re Lerch*, 147 B.R. 455 (Bankr.C.D.Ill.1997); *In re All Am. Mfg. Corp.*, 172 B.R. at 397; 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30–3 at 20 (4th ed.1995).

Middleton testified that during the term of the lease, the risk of loss was on Mirly and that the Debtor could terminate the agreement anytime he wanted. However, Middleton did not testify that these were terms agreed to by the parties. The Debtor testified that he had no discussion with

---

**3.** The four conditions are:

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement. Ark.Code Ann. § 4–1–201(37)(Michie Supp. 1997).

Middleton about his right to walk away from the lease and no provision concerning termination or risk of loss was ever put in writing. The Court finds that there was no agreement regarding the Debtor's right to terminate the lease.

Section 4–1–201(37) of the Arkansas Code compels the result that the transaction be construed as a sale and security interest as a matter of law because there was no agreement the Debtor could terminate the lease and the Debtor became the owner of the trailer at the end of the lease term for the sum of one dollar ($1.00). Ark.Code Ann. § 4–1–201(37)(Michie Supp.1997). *See, In re Eagle Enters.*, 223 B.R. 290 (Bankr.E.D.Pa.1998); *All Am. Mfg. Corp. v. Quality Textile Screen Prints, Inc. (In re All Am. Mfg. Corp.)*, 172 B.R. 394 (Bankr.S.D.Fla.1994); *Venn v. Howell's Auto Repair Ctr, Inc. (In re Howell)*, 161 B.R. 285 (Bankr.N.D.Fla. 1993).

Therefore, for the reasons stated herein, the objection to confirmation is overruled and the motion for relief from the automatic stay is denied.

IT IS SO ORDERED.