**In re Johnnie J. MINTON and Janice Minton, Debtors.**

**No. 01–60699.**

United States Bankruptcy Court, W.D. Arkansas, Hot Springs Division.

Dec. 11, 2001.

Jack W. Dickerson, Hot Springs, AR, for debtors.

Ronald D. Kelsay, for creditor.

Jo–Ann L. Goldman, Little Rock, AR, trustee.

## ORDER SUSTAINING RENT–A–CENTER'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court is an objection to confirmation of chapter 13 plan filed by creditor Rent–A–Center, Inc. ("Rent–A–Center") on June 13, 2001. An evidentiary hearing on the objection to confirmation was held on September 6, 2001. At the conclusion of the evidentiary hearing, the Court took the matter under advisement. Because this involves the confirmation of a chapter 13 plan, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court may make the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. *Findings of Fact.*

On June 4, 2001, Johnnie J. Minton and Janice Minton ("Debtors") filed a joint voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. The Debtors' proposed chapter 13 plan was filed contemporaneously with their petition. Debtors' schedules list Rent–A–Center as a secured creditor with a claim of $600.00 secured by a refrigerator and stove. Debtor's plan proposes to pay Rent–A–Center's claim in full, with interest at the rate of 10%. Rent–A–Center is to receive a pro-rata share of Debtors' monthly $500.00 plan payment over the thirty-six month duration of Debtors' proposed plan.

Rent–A–Center filed an objection to the confirmation of Debtors' plan on June 13, 2001. In its objection, Rent–A–Center argues that certain agreements between Debtors and Rent–A–Center constitute "true leases" which must be accepted or rejected by Debtors under the Bankruptcy Code. Because Debtors' plan treats Rent–A–Center as a secured creditor, Rent–A–Center contends that confirmation of Debtors' plan should be denied and that Debtors should be required to accept or reject the agreements with Rent–A–Center.

On September 6, 2001, the Court conducted an evidentiary hearing on the objection to confirmation, at which time the Court received into evidence a joint stipulation of facts executed by counsel for Debtors and counsel for Rent–A–Center. The Court adopts the parties' joint stipulations of fact. The parties stipulated that Debtors and Rent–A–Center entered into a number of agreements entitled "Rental Purchase Agreements," which were attached to the joint stipulation as exhibits A–F. The parties further stipulated that only exhibits B, C, and F, which were related to a refrigerator, an electric range, and a mattress, pertain to property still in possession of Debtors and in dispute in this matter.

Exhibit B, which pertains to a refrigerator, states as follows:

## RENTAL PURCHASE AGREEMENT

**Date:** March 25, 2000     **Agreement Number:** 88604379

**Lessor:** Rent–A–Center, Inc.     **Renter:** Minton, Johnnie J/Janice D
[address omitted]          [address omitted]

## TERMS OF AGREEMENT

As used in this agreement "you" and "your" mean the person(s) signing this agreement as renter; "we" and "our" mean the Lessor/Owner (the rental company); "property" means the items described in the disclosures; and "lease" means this Rental Purchase Agreement including the disclosures.

## RENTAL PURCHASE DISCLOSURES

1.     RENTAL TERM:     MONTHLY> WEEKLY.

Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the property before the end of the term.

2.     DESCRIPTION OF PROPERTY AND RENTAL RATES:

| Unit # | Categ./Descp. | Serial # | Cond. | Monthly Rent | * Optional Weekly Rent |
|--------|---------------|----------|-------|--------------|------------------------|
| 86600739 | Appliance/Refrigerator | EJ1024493 | USED | 79.96 | 19.99 |

\* You may elect to pay the monthly rental and any monthly renewals in weekly installments. If you choose this payment method, payments will be due the same day each week. Because of the increased costs associated with offering you this payment plan, the cost to acquire ownership will be greater. Your optional weekly payments are listed above.

3. INITIAL RENT PAYMENT. Your initial rent payment will include the following charges:

| Rent | Delivery Charge | Sales Tax | Other | Total |
|------|-----------------|-----------|-------|-------|
| 19.99 | .00 | 1.53 | 1.50 | 23.02 |

4. OTHER CHARGES:

| N/A | Optional Damage Waiver Fee | Reinstatement Fee | Late Charge |
|-----|----------------------------|-------------------|-------------|
| | 6.00/Month 1.50/Week | $5.00/Payment missed while you retain the property. | 5.00 |

5. COST OF LEASE. If you choose to rent to own you must rent the property for the following number of months or weeks:

22 Months@ 79.96/mo. for a total cost of $1,760.62 ☞ TAX
96 Weeks@ 19.99 /wk. for a total cost of $1,920.54 ☞ TAX

You do not acquire any ownership rights in the property until you rent the property for the months shown here, or purchase it for cash sooner.

6. RISK OF LOSS. You are liable for loss and damage in excess of normal wear and tear, and destruction to the leased property. If the property is lost, damaged, or stolen while you are renting it, or if for any reason we are not given possession of it when this lease ends, you are liable for the lesser of our repair or replacement cost.

7. REINSTATEMENT. If this lease expires you many reinstate (i) within five (5) business days of expiration date if renting monthly or (ii) within two (2) business days of the expiration date if renting weekly, by paying all rental payments and other charges that are due. If you do not pay and you return the property within the appropriate reinstatement period (other than through judicial process), you will have thirty (30) days from the date of return of the merchandise to reinstate without losing any rights or options. Upon reinstatement, we will provide you with the same or substitute property of comparable quality and condition. You have no right to reinstate this agreement more than three (3) times.

**TYPE OF TRANSACTION: THIS IS A RENTAL TRANSACTION.** You may use the property for the term of this lease. At your option, you may renew this lease, by making a rental payment in advance for each term you choose to rent the property. The rental rates are shown in the disclosures. Time is of the essence in this lease. **INTENT**: You agree that your intent is to rent rather than purchase the property. **TERMINATION**: You are not obligated to renew this agreement and may terminate this agreement at any time without penalty by returning the rental property. **CONDITION OF THE PROPERTY**: You agree that you have received the property in satisfactory condition. **TITLE AND TAXES:** We retain title to the property during this lease and will pay any taxes which may be levied on the property. You do now [sic] own the property unless you buy it or acquire ownership as provided in the terms of this lease. **FORBIDDEN ACTS:** You cannot sell, mortgage, pawn, pledge, encumber, hock or dispose of the property. You cannot move the property from your current residence without our consent. Each of these acts is a breach of this lease. **OUR RIGHTS TO TAKE POSSESSION:** If you do not renew this lease or if you breach this lease, we have the right to possession of the property. If that happens, you must return the

property to us or allow us to take possession of it. If you fail or refuse to comply with this requirement, you agree to pay our costs incurred in taking possession of the property including reasonable attorney's fees. **WARRANTY:** If you acquire ownership of the property, the manufacturers's warranty will be transferred to you, if the warranty is still in effect and if we are allowed to transfer it to you. **ASSIGNMENT:** We may sell, transfer or assign this lease. **NOTICE TO RENTER:** Do not sign this lease before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Rental Purchase Agreement you sign. Keep it to protect your legal rights.

YOU AGREE BY SIGNING THIS LEASE THAT (1) YOU READ IT,
(2) YOU UNDERSTAND IT AND (3) YOU RECEIVED A SIGNED COPY OF IT.

DATE: 3/25/00                                    RENTER: [signed by Johnnie J. Minton, Jr.]

LESSOR: [signed by Rent–A–Center]        RENTER: [signed by Janice Minton]

Exhibit C, which pertains to an electric range, states as follows:

**RENTAL PURCHASE AGREEMENT**

**Date:** March 28, 2000                          **Agreement Number:** 88604403

**Lessor:** Rent–A–Center, Inc.                  **Renter:** Minton, Johnnie J/Janice D
      [address omitted]                                    [address omitted]

**TERMS OF AGREEMENT**

As used in this agreement "you" and "your" mean the person(s) signing this agreement as renter; "we" and "our" mean the Lessor/Owner (the rental company); "property" means the items described in the disclosures; and "lease" means this Rental Purchase Agreement including the disclosures.

**RENTAL PURCHASE DISCLOSURES**

1.      RENTAL TERM:    MONTHLY> WEEKLY.

Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the rental property before the end of the term.

2.      DESCRIPTION OF PROPERTY AND RENTAL RATES:

| Unit # | Categ./Descp. | Serial # | Cond. | Monthly Rent | * Optional Weekly Rent |
|--------|---------------|----------|-------|--------------|------------------------|
| 88601176 | Appliance/Electric Range | RJ5048844 | NEW | 55.96 | 13.99 |

* You may elect to pay the monthly rental and any monthly renewals in weekly installments. If you choose this payment method, payments will be due the same day each week. Because of the increased costs associated with offering you this payment plan, the cost to acquire ownership will be greater. Your optional weekly payments are listed above.

3.      INITIAL RENT PAYMENT. Your initial rent payment will include the following charges:

| Rent | Delivery Charge | Sales Tax | Other | Total |
|------|-----------------|-----------|-------|-------|
| 13.99 | .00 | 1.07 | 1.05 | 16.11 |

4.      OTHER CHARGES:

        N/A      Optional Damage Waiver Fee Reinstatement Fee Late Charge

4.20/Month 1.05/Week      $5.00/Payment     5.00
missed while you
retain the property.

5.      COST OF LEASE. If you choose to rent to own you must rent the property for the following number of months or weeks:

24    Months@ 55.96/mo. for a total cost of $1,344.09 + TAX
96    Weeks@ 19.99 /wk. for a total cost of $1,456.01 + TAX

You do not acquire any ownership rights in the property until you rent the property for the months shown here, or purchase it for cash sooner.

6.      RISK OF LOSS. You are liable for loss and damage in excess of normal wear and tear, and destruction to the leased property. If the property is lost, damaged, or stolen while you are renting it, or if for any reason we are not given possession of it when this lease ends, you are liable for the lesser of our repair or replacement cost.

7.      REINSTATEMENT. If this lease expires you many reinstate (i) within five (5) business days of expiration date if renting monthly or (ii) within two (2) business days of the expiration date if renting weekly, by paying all rental payments and other charges that are due. If you do not pay and you return the property within the appropriate reinstatement period (other than through judicial process), you will have thirty (30) days from the date of return of the merchandise to reinstate without losing any rights or options. Upon reinstatement, we will provide you with the same or substitute property of comparable quality and condition. You have no right to reinstate this agreement more than three (3) times.

**TYPE OF TRANSACTION: THIS IS A RENTAL TRANSACTION.** You may use the property for the term of this lease. At your option, you may renew this lease, by making a rental payment in advance for each term you choose to rent the property. The rental rates are shown in the disclosures. Time is of the essence in this lease. **INTENT:** You agree that your intent is to rent rather than purchase the property. **TERMINATION:** You are not obligated to renew this agreement and may terminate this agreement at any time without penalty by returning the rental property. **CONDITION OF THE PROPERTY**: You agree that you have received the property in satisfactory condition. **TITLE AND TAXES:** We retain title to the property during this lease and will pay any taxes which may be levied on the property. You do now [sic] own the property unless you buy it or acquire ownership as provided in the terms of this lease. **FORBIDDEN ACTS:** You cannot sell, mortgage, pawn, pledge, encumber, hock or dispose of the property. You cannot move the property from your current residence without our consent. Each of these acts is a breach of this lease. **OUR RIGHTS TO TAKE POSSESSION:** If you do not renew this lease or if you breach this lease, we have the right to possession of the property. If that happens, you must return the property to us or allow us to take possession of it. If you fail or refuse to comply with this requirement, you agree to pay our costs incurred in taking possession of the property including reasonable attorney's fees. **WARRANTY:** If you acquire ownership of the property, the manufacturers's warranty will be transferred to you, if the warranty is still in effect and if we are allowed to transfer it to you. **ASSIGNMENT:** We may sell, transfer or assign this lease. **NOTICE TO RENTER:** Do not sign this lease before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Rental Purchase Agreement you sign. Keep it to protect your legal rights.
YOU AGREE BY SIGNING THIS LEASE THAT (1) YOU READ IT, (2) YOU UNDERSTAND IT AND (3) YOU RECEIVED A SIGNED COPY OF IT.

DATE: 3/28/00                  RENTER: [signed by Johnnie J. Minton, Jr.]

LESSOR: [signed by Rent–A–Center]      RENTER:

Exhibit F, which pertains to a mattress, states as follows:

*RENTAL PURCHASE AGREEMENT*

**Date:** May 12, 2001 .        . **Agreement Number:** 88607016

**Lessor:** Rent–A–Center, Inc.       **Renter:** Minton, Johnnie J/Janice D
        [address omitted]                           [address omitted]

**TERMS OF AGREEMENT:** As used in this agreement "you" and "your" mean the person(s) signing this lease as lessee/renter/consumer; "we" and "our" mean the lessor/owner (the rental company); "property" means the items described in the disclosures; and "lease" means this Rental Purchase Agreement including the disclosures.

### RENTAL PURCHASE DISCLOSURES

RENTAL TERM: WEEKLY. Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the rental property before the end of the term.

DESCRIPTION OF RENTAL PROPERTY:

| Item # | Item Description | Model # | Serial # | This Property is: |
|---|---|---|---|---|
| 86600458 | FURNITURE/QUEEN MATTRESS | 402309 | 402309–13 | USED |

INITIAL PAYMENT: Your initial payment will include the following charges:

| Rent | Optional Liability Damage Waiver | Tax | Total |
|---|---|---|---|
| $14.99 | $1.12 | $1.23 | $17.34 |

RENEWAL PAYMENTS: You are not obligated to renew this Agreement beyond the initial term. However, if you choose to renew this Agreement beyond the initial term, or beyond any subsequent renewal term, you may do so by making an advance lease payment on Saturday of each WEEK, or you may choose to make advance lease payments on a SEMI MONTHLY or MONTHLY basis.

| Lease Rates | Lease Payment | Optional Liability Damage Waiver | Tax | Total |
|---|---|---|---|---|
| Weekly | $14.99 | $1.12 | $1.23 | $17.34 |

[semi monthly and monthly rates omitted]

OTHER CHARGES:

| Optional Liability Damage Waiver | Reinstatement Fee |
|---|---|
| $1.12/Week | $5.00 |
| [semi monthly and monthly rates omitted] | |

TOTAL COST: If you choose to acquire ownership, you must rent the property for the number of weeks, semi months or months shown below. The Total Cost stated includes all rental payments plus sales tax, but does not include optional liability damage waiver fees and other charges, such as late charges you may incur by late payment renewal, or reinstatement fees. You should read the contract for an explanation of these charges.

Weekly.     If you choose to acquire ownership through weekly rental, you will make 40.0 payments: the initial rental payment of $14.99, 38.0 weekly payments of $14.99 and a final payment of $6.42 for a total of $591.03 in rent and sales tax of $44.95 for a Total Cost of $635.98.

[Semi monthly and monthly rates omitted.]

If you choose to renew this Agreement on a frequency different from your initial rental payment term, your Total Cost will be calculated based on the above amounts and on the number of payments made at each frequency. Sales taxes are subject to changes in the applicable tax rate.

THE CASH PRICE OF THIS PROPERTY: $292.30, plus tax.

OWNERSHIP: We own the rental property described above. You will not acquire any ownership rights until you have complied with the ownership terms of the agreement or purchase it for cash sooner.

REINSTATEMENT: If you fail to make a timely payment, you may reinstate this agreement, without losing any rights or options previously acquired by either paying all rental and other charges due or returning the merchandise to us within 5 business days from the date of the last scheduled rental payment if you pay rent monthly, or within 2 business days from the date of the last scheduled rental payment if you pay weekly or semi-monthly. If the merchandise is returned during the applicable reinstatement period, other than through judicial process, the right to reinstate shall be extended for a period of not less than 30 days after the date of the return of the merchandise. You shall not have the right to reinstate more than 3 times during the term of any one rental-purchase agreement. On reinstatement, we shall provide you with the same merchandise or substitute merchandise of comparable quality and condition.

RISK OF LOSS: You are liable for loss and damage in excess of normal wear and tear. You agree to pay us the fair market value of the property if the property is lost, stolen, damaged or destroyed. The maximum amount for which you may be held liable shall be the Early Purchase Option amount as calculated on the date of the loss.

TYPE OF TRANSACTION: THIS IS A RENTAL TRANSACTION.

EARLY PURCHASE OPTION: If you wish to purchase the rental property you may do so at any time by the payment of 50% of the remaining total of payments calculated at that time.

TERMINATION: You may terminate this rental-purchase agreement without penalty by voluntarily surrendering or returning the rental property to us in good condition at any time. You will be liable for any unpaid rental payments due as of the date of return and for any damage to the rental property, fair wear and tear excepted.

MAINTENANCE AND WARRANTY: We are responsible to make all normal repairs as long as you are leasing the property. We will not be responsible for the costs or the results of any unauthorized repairs or damage caused by improper use. If any part of a manufacturer's express warranty covers the rental property at the time you acquire ownership of the property, it will be transferred to you, if allowed by the terms of the warranty.

ASSIGNMENT: We may sell, transfer or assign this lease without notice to you.

TITLE AND TAXES: We retain title to the rental property at all times and will pay any taxes which may be levied on the rental property. You do not own the property unless you buy it or acquire ownership as provided in the terms of this lease.

FORBIDDEN ACTS: You cannot sell, mortgage, pawn, pledge, encumber, hock or dispose of the property. Except for property that is designed to be carried by a person, you cannot move the property from your current residence without our consent. Each of these acts is a breach of this lease.

OUR RIGHTS TO TAKE POSSESSION: If you do not renew this lease or if you breach this lease, we have the right to possession of the property. If that happens, you agree to return the rental property or make arrangements for us to take possession of it. If you fail or refuse to comply with this requirement, you agree to pay our costs incurred in taking possession of the rental property including reasonable attorney's fees.

NOTICE TO CONSUMER: Do not sign this Rental Purchase Agreement before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Rental Purchase Agreement you sign. Keep it to protect your legal rights.

YOU AGREE BY SIGNING THIS LEASE THAT (1) YOU READ IT, (2) YOU UNDERSTAND IT AND (3) YOU RECEIVED A SIGNED COPY OF IT.

DATE: 5/12/01                    CONSUMER: [signed by Johnnie J. Minton, Jr.]

LESSOR: [signed by Rent–A–Center]      CONSUMER:

Exhibit F, which pertains to a mattress, states as follows:

---

The parties stipulated that Rent–A–Center owns the respective property in the three Rental Purchase Agreements, subject to Debtors' right to own said property through compliance with the ownership provisions as stated in each agreement. The parties also stipulated that Rent A Center pays all personal property taxes assessed against the subject property, that Rent A Center is responsible for the normal maintenance and repair of the property, and that Debtors ceased making payments on the subject property on June 4, 2001, prior to the filing of Debtors' bankruptcy petition.

Mr. Minton testified at the September 6, 2001 evidentiary hearing that his intent was to purchase each of the times identified in the Rental Purchase Agreements. However, Mr. Minton also testified that he and Mrs. Minton read, understood, and signed each of the Rental Purchase Agreements, each of which expressly stated that "this is a rental transaction."

## II.  *Issue Before the Court and Positions of the Parties.*

The sole issue before the Court is whether the Rental Purchase Agreements between Debtors and Rent A Center constitute lease agreements or conditional sales contracts. Debtors take the position that the Rental Purchase Agreements constitute conditional sales contracts, which may be treated as a secured claim in their chapter 13 plan. Rent A Center objects to being treated as a secured creditor and takes the position that the Rental Purchase Agreements are unexpired leases which must be accepted or rejected by Debtors pursuant to 11 U.S.C. § 365.

## III.  *Conclusions of Law.*

The proper treatment of Rent A Center's claim in Debtors' chapter 13 plan hinges on the Court's determination of whether the Rental Purchase Agreements constitute sales contracts or unexpired leases. *In re Taylor,* 130 B.R. 849, 853 (Bankr.E.D.Ark.1991). If the Rental Purchase Agreements are conditional sales contracts, Debtors must treat Rent–A–Center's claim as provided in either 11 U.S.C. § 1325(a)(4) or § 1325(a)(5). *In re Copeland,* 238 B.R. 801, 803 (Bankr. E.D.Ark.1999); *In re Macklin,* 236 B.R. 403, 405 (Bankr.E.D.Ark.1999). If the Rental Purchase Agreements are unexpired leases, Debtors must either assume or reject the leases, and if Debtors wish to retain the property, Debtors must cure all defaults and perform the leases according to their terms and in compliance with 11 U.S.C. § 365(b). *Id.* Specifically, if Debtors choose to assume the leases, Debtors' plan may not be confirmed unless Debtors "(A) cure, or provide adequate assurance

that [they] will promptly cure, such defaults; (B) compensate, or provide adequate assurance that [they] will promptly compensate [Rent A Center] ... for any actual pecuniary loss to [Rent A Center] resulting from such default; and (C) provide adequate assurance of future performance under such contract or lease." *Taylor*, 130 B.R. at 853 (quoting 11 U.S.C. § 365(b)(1)).

■ In determining whether the Rental Purchase Agreements are conditional sales or leases, the Court must look to applicable state law. *Copeland*, 238 B.R. at 803; *Macklin*, 236 B.R. at 406. It is well settled that bankruptcy courts determine the nature and extent of property interests based on state law. *Meeks v. First Bank of South Arkansas (In re Tracy's Flowers and Gifts)*, 264 B.R. 1, 3 (Bankr.W.D.Ark.2001) (citing *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Although the agreements are silent as to governing law, the Court finds that the agreements are governed by Arkansas law, as Debtors are Arkansas residents, Rent–A–Center is a corporation existing in or licensed to do business in Arkansas, and all of the subject transactions occurred in Arkansas. *In re Brown*, 82 B.R. 68, 71 (Bankr.W.D.Ark. 1987).

■ The parties have cited, and the Court has reviewed, numerous decisions [1] by both bankruptcy courts and Arkansas state courts analyzing the often difficult question of whether an agreement is a sale or lease based on the factors set forth in the Uniform Commercial Code [2] or based on a "laundry list" of factors [3] developed by the Arkansas courts. The Court finds that those cases are not applicable to the facts of this case, as another Arkansas statute specifically resolves the issue of whether the Rental Purchase Agreements are conditional sales contracts or lease agreements. Under Arkansas law, "[t]he rule is well settled that a general statute must yield when there is a specific statute involving the particular matter." *Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 602, 29 S.W.3d 730 (2000).

■ The Arkansas Rental Purchase Act, codified at Arkansas Code Annotated §§ 4–92–101 to –107, resolves the question of whether the Rental Purchase Agreements constitute conditional sales or leases under Arkansas law. The Rental Pur-

---

1. For a thorough listing of such cases, see *Macklin*, 236 B.R. at 406.

2. Under the Uniform Commercial Code, an agreement creates a security interest, rather than a lease, if it is not terminable by the lessee and: (a) the term of the lease is equal to or greater than the economic life of the goods; (b) the lessee is bound to become the owner of the goods; (c) the lessee can continue to "lease" the goods at the end of the original lease for no additional consideration; or (d) the lessee can become the owner of the goods at the end of the original lease for no additional consideration. ARK CODE ANN. § 4–1–207(37) (Supp.2001).

3. Such factors include: (1) whether or not the lessor is a financing company; (2) whether it is the lessor or lessee who must bear the risk of loss; (3) whether the lessor, upon the lessee's default, has any remedies that would be available to a conditional seller or to a mortgagee for such a default; (4) whether the agreement provides for the execution of financial statements or such other instruments to protect the lessor's interest in the property; (5) whether or not there is an absence of any appreciable residual in the lessor at the end of the lease; (6) whether the lessee is obligated to make payments equivalent to the purchase price of the property; and (7) whether the agreement requires a down payment or payments in advance. *In re Taylor*, 130 B.R. 849, 853–54 (Bankr.E.D.Ark.1991) (citations omitted).

chase Act defines a "Rental-purchase agreement" as follows:

"Rental-purchase agreement" means an agreement for the use of merchandise by a consumer for personal, family, household, or business purposes for an initial period of four (4) months or less that is automatically renewable with each payment after the initial period, but does not obligate or require the consumer to continue leasing or using the merchandise after the initial period, and that permits the consumer to become the owner of the merchandise, but does not obligate the consumer to purchase or become the owner of the merchandise.

ARK.CODE ANN. § 4–92–102 (1996). "Merchandise" is defined as "personal property that is the subject of a rental-purchase agreement," a "Consumer" is "a person who leases personal property under a rental-purchase agreement," and a "Lessor" is one who engages in the business of leasing, offering to lease, or arranging for the lease of merchandise under a rental-purchase agreement. *Id.*

The Rental Purchase Act expressly provides that an agreement conforming to the definitions above is a true lease and does not constitute a sale or security interest under the Uniform Commercial Code. Specifically, Arkansas Code Annotated § 4–92–104 states that:

An agreement which conforms with the definition as set forth in § 4–102(7) shall be a true lease and shall not constitute a credit sale, retail installment contract, agreement, obligation, or any other type of credit sale financing device, nor shall it create a security interest as that term is defined in § 4–1–201(37). Until the lessor transfers title to the merchandise to the consumer, the relationship of the parties to a rental-purchase agreement shall be that of a lessor and lessee and

not that of a seller and buyer, and title to the merchandise shall remain vested with the lessor.

*Id.* § 4–92–104.

The Rental Purchase Act also sets forth a list of disclosures that are required to be in Rental-purchase agreement, as defined by the Rental Purchase Act. A Rental-purchase agreement must disclose:

(1) Whether the merchandise is new or used;

(2) The amount and timing of regular rental payments;

(3) The total number of payments necessary and the total amount to be paid to acquire ownership;

(4) The amounts and purpose of any other payment, charge, or fee in addition to the regular periodic rental payment;

(5) That the consumer does not acquire any ownership rights until the consumer has complied with the ownership terms of the agreement;

(6) Whether the consumer is liable for loss or damage to the merchandise, and if so, the maximum amount for which the consumer may be held liable.

(7) Notice of the right to reinstate an agreement as provided in § 4–92–106(a).

*Id.* § 4–92–105(b).

The Rental Purchase Act also sets forth the following list of provisions that are prohibited in a Rental-purchase agreement:

(1) Requiring a confession of judgment;

(2) Authorizing a merchant or agent of the merchant to commit a breach of the peace while repossessing merchandise;

(3) Waiving a defense, counterclaim, or right the consumer may have against the merchant or an agent of the merchant; or

(4) Requiring the purchase of insurance from the merchant to cover the merchandise.

*Id.* § 4–92–105(a).

Finally, the Rental Purchase Act also provides that the consumer has a right to reinstate a Rental-purchase agreement by "paying all rental and other charges due or returning the merchandise to the lessor." *Id.* § 4–92–106(a). This must be done within five business days from the date of the last scheduled payment if the consumer pays monthly, or within two days if the consumer pays more frequently than monthly. *Id.* § 4–92–106(a).

There are three Rental Purchase Agreements at issue in this case. The three Rental Purchase Agreements were introduced into evidence at the September 6, 2001 hearing as exhibits B, C, and F to the parties' stipulation of facts and were set forth in detail previously in this opinion. Exhibits B and C, for a refrigerator and an electric range, dated March 25, 2000 and March 28, 2000, respectively, are printed on identical forms. Exhibit F, for a queen-size mattress, dated May 12, 2001, is on a slightly different form.

The Court concludes that all three Rental Purchase Agreements fall within the definition of Rental-purchase agreement contained in § 4–92–102(7) of the Arkansas Code. Specifically, each of the Rental Purchase Agreements are agreements for the use of merchandise by a consumer for personal, family, household, or business purposes. Each of the Rental Purchase Agreements provides for an initial rental period of one week, which meets the "four months or less" requirement of the Rental Purchase Act, and each of the Rental Purchase Agreements provides that the initial period is automatically renewable with each payment after the initial period. In accordance with the Rental Purchase Act, none of the Rental Purchase Agreements

obligate Debtors to continue leasing or using the merchandise after the initial period, and the Rental Purchase Agreements each permit Debtors to become the owners of the merchandise, but do not obligate Debtors to purchase or become owners of the merchandise.

The Court also finds that each of the three Rental Purchase Agreements meet the disclosure requirements set forth in § 4–92–105(b). Pursuant to § 4–92–105(b)(1), all three Rental Purchase Agreements disclose whether the merchandise is new or used. Pursuant to § 4–92–105(b)(2), each of the Rental Purchase Agreements sets forth the amount and timing of payments. Pursuant to § 4–92–105(b)(3), each of the Rental Purchase Agreements details the total number of payments and total amount necessary to acquire ownership. Pursuant to § 4–92–105(b)(4), each of the Rental Purchase Agreements lists any other charges, such as the optional damage waiver fee and reinstatement fee, under the category "Other Charges," and each of the Rental Purchase Agreements discloses the amount of those fees. Pursuant to § 4–92–105(b)(5), each of the Rental Purchase Agreements discloses that Debtors will not acquire any ownership rights until Debtors have complied with the ownership terms of the Rental Purchase Agreements. Pursuant to § 4–92–105(b)(6), each of the Rental Purchase Agreements discloses that the risk of loss is on Debtors, and sets forth the maximum amount for which Debtors may be liable. Finally, pursuant to § 4–92–105(b)(7), each of the Rental Purchase Agreements contains a notice of Debtors' right to reinstate the agreement pursuant to § 4–92–106(a).

In addition, the Court has reviewed each of the Rental Purchase Agreements in detail and finds that none of the Rental Purchase Agreements contain any of the

following provisions forbidden by § 4–92–105(a):

(1) Requiring a confession of judgment;

(2) Authorizing a merchant or agent of the merchant to commit a breach of the peace while repossessing merchandise;

(3) Waiving a defense, counterclaim, or right the consumer may have against the merchant or an agent of the merchant; or

(4) Requiring the purchase of insurance from the merchant to cover the merchandise.

*Id.* § 4–92–105(a).

Based on the foregoing, the Court finds that the three Rental Purchase Agreements at issue in this case meet the requirements the Rental Purchase Act codified at Arkansas Code Annotated § 4–92–101, *et seq.* Consequently, the Court holds as a matter of law that the three Rental Purchase Agreements constitute true leases, and do not constitute credit sales, retain installment contracts, agreements, obligations, or any other type of credit sale financing device, nor a security interest as that term is defined in Arkansas Code Annotated § 4–1–201(37).

Because the Rental Purchase Agreements between Debtors and Rent–A–Center are "true leases," which must be accepted or rejected under the Bankruptcy Code, Rent–A–Center's objection to confirmation is sustained. Debtors are granted twenty days from the entry of this order, until January 2, 2002, to file a modified plan consistent with this order.

IT IS SO ORDERED.