# IN THE COURT OF APPEALS OF IOWA

No. 14-1552
Filed October 28, 2015

**CD CONSTRUCTION, L.L.C.,**
    Petitioner-Appellant,

**vs.**

**HARD HAT INDUSTRIES, INC.,**
    Respondent-Appellee.

_____

    Appeal from the Iowa District Court for Fremont County, James M. Richardson, Judge.

    CD Construction, L.L.C. appeals the district court's ruling entering judgment in favor of Hard Hat Industries, Inc. **AFFIRMED.**

    Jon H. Johnson of Johnson Law, P.L.C., Sidney, for appellant.

    Stephen C. Ebke of Ebke Law, Council Bluffs, for appellee.

    Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, Presiding Judge.**

CD Construction, L.L.C. appeals the district court's ruling entering judgment in favor of Hard Hat Industries, Inc., claiming the district court erred in concluding (1) the parties executed a sale of the excavator with a lease-back agreement rather than a loan secured by the excavator, and (2) that CD Construction was delinquent in its payments and failed to cure under the agreement. We affirm.

## I.    *Background Facts and Proceedings*

CD Construction is an Iowa limited liability corporation engaged in the construction business, owned and operated by Chris Doty. Hard Hat Industries (HHI) is an Iowa corporation engaged in the business of repairing and selling construction equipment, owned and managed by Donnie Baggs. In June 2010, CD Construction purchased a used Komatsu excavator from HHI for $136,000 on a "rent-to-purchase" agreement. In September 2013, CD Construction completed the final payment on the excavator to own the excavator "free and clear."

Around that time, the excavator was due for its yearly maintenance and required approximately $25,000 in repairs. Doty was experiencing financial difficulties. In early October, Doty asked Baggs "if [he] could borrow some money." Doty and Baggs reached a deal, although the parties now dispute what they agreed to; Doty believed he asked Baggs for a loan whereas Baggs testified they agreed Doty would sell the excavator to HHI and HHI would lease the excavator back to him.

HHI issued a check to CD Construction in the sum of $35,000, dated October 4, 2013. The check referenced the excavator and was endorsed by Doty. Doty thereafter cashed the check.

Doty provided HHI with a bill of sale for the excavator.[1] The bill of sale, signed by Doty and dated October 4, 2013, provided: "I, Chris Doty/CD Construction LLC, sold 1 Komatsu PC270LC-8 S/N A87287 to Hard Hat Industries Inc for $35,000 on 10/04/2013. It is sold as is, where is with no warranty expressed or implied."

The parties then entered a lease agreement, dated October 6, 2013, for the excavator, signed by HHI as lessor and Doty as lessee. The agreement specified seventeen monthly payments of $2500 plus tax with a balloon payment on the eighteenth month to "buy out" the excavator. After six months of the lease, an option to purchase the excavator was granted to Doty for a purchase price of $50,000. HHI was required to "at its own cost and expense . . . keep the property in good repair, condition, and working order." Over the next few months, HHI completed more than $23,000 in repairs on the excavator. The agreement also provided "[t]he nonpayment by Lessee for a period of 30 days of any sum required hereunder to be paid" constituted a default.

By March 2014, Doty/CD Construction had become delinquent on payments due pursuant to the lease agreement.[2] Doty and Baggs had discussions but the delinquency was not satisfied. On March 11, 2014, HHI's

---

[1] Baggs told Doty he would need a bill of sale, which Doty "assumed" was "[f]or security."
[2] The last payment was made on January 8, 2014.

attorney sent a notice of termination of lease to CD Construction. HHI subsequently sold the excavator for $83,500 to a company in Texas.

CD Construction filed a petition, alleging claims of conversion and breach of contract against HHI. HHI filed an answer, denying CD Construction's claims and requesting dismissal of CD Construction's claims. Following a bench trial, at which the district court heard testimony from Doty and Baggs and received a number of exhibits, the court entered a ruling in favor of HHI and dismissed CD Construction's claims. CD Construction appeals. Additional facts will be set forth below as relevant to the issues presented.

## II. Standard of Review

Our review is for correction of errors at law. *See NevadaCare*, *Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's findings of fact have the effect of a special verdict and are binding on us if they are supported by substantial evidence. Iowa R. App. P. 6.907; *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995). However, the district court's legal conclusions and applications of legal principles are not binding on us and we will reverse a district court's judgment if we find the court has applied erroneous rules of law which materially affected its decision. *See NevadaCare*, *Inc.*, 783 N.W.2d at 465.

## III. Lease Agreement or Sale with Security Interest

CD Construction contends the district court erred in determining the parties executed a sale of property with a lease-back agreement and not a security interest, "in spite of the fact that the 'lease agreement' contained a security agreement clause." HHI counters the parties entered into a lease-back

agreement following CD Construction's sale of the excavator to HHI, similar to the parties' 2010 rent-to-purchase agreement.

A lease is defined as a "transfer of the right to possession and use of goods for a term in return for consideration, but a sale . . . or retention or creation of a security interest is not a lease." Iowa Code § 554.13103(1)(j) (2013). This definition specifically excludes a transaction that retains or creates a security interest. *See id.* Therefore we must determine whether the agreement retained or created a security interest. *See C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 757 (Iowa 2010).

The facts of each case determine whether a transaction creates a lease or sale with a security interest. *See id.*; *see also* Iowa Code § 554.1203(1). A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Iowa Code § 554.1201(2)(ai). Section 554.1203 governs whether a contract in the form of a lease actually creates a lease or a security interest. It provides:

> A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
> a. the original term of the lease is equal to or greater than the remaining economic life of the goods;
> b. the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> c. the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> d. the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

*Id.* § 554.1203(2).

Here, the parties' agreement is entitled "**THE LEASE AGREEMENT**" for "**LEASE – PERSONAL PROPERTY**." Paragraph 21 of the agreement provides: "**SECURITY INTEREST**. In addition to Lessor's rights, herein, Lessor shall have a security interest in all of the property. Lessee hereby agrees to execute such documents as Lessor may require in order that Lessor may perfect its security interest under the provisions of the Iowa Uniform Commercial Code."

"Whether a contract constitutes a lease or a security agreement, however, does not depend on whether the parties call it a 'lease' or a 'security agreement.' Rather, the nature of a contract depends 'objectively on the economic reality of the transaction.'" *Gen. Elec. Capital Corp. v. FPL Serv. Corp.*, 986 F. Supp. 2d 1029, 1038 (N.D. Iowa 2013) (quoting *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 76 (Iowa 2011)).

The supreme court has described section 554.1203 as creating a "two-part" "bright-line" test for determining whether an agreement creates a security interest. *See Wolfe*, 795 N.W.2d at 74 (discussing the provision as it was previously numbered, section 554.1201(37)(a) (2003)); *Outlook Farm Golf Club*, 784 N.W.2d at 757 (same). Under the test, the contract in this case creates a security interest, not a lease, "if it: (1) prohibits [CD Construction] from terminating the obligation to pay [HHI] for the right to possess and use the [excavator], and (2) meets one of the four independent criteria listed in [section 554.1203(2)(a)-(d)]." *See Wolfe*, 795 N.W.2d at 74; *Outlook Farm Golf Club*, 784 N.W.2d at 757; *see also Gen. Elec. Capital Corp.*, 986 F. Supp. 2d at 1038-39; *In re PSINet, Inc. v. Cisco Sys. Capital Corp.*, 271 B.R. 1, 43-45 (Bankr. S.D.N.Y.

2001) (recognizing the presence of any one of the four criteria indicates the lessor did not retain a residual interest in the property and therefore, the lease is not a true lease).

With regard to the first part of the test, the lease agreement provided, "Lessee shall have the right to cancel this agreement 10 days after the first day of the term of this agreement. Cancellation is effective 10 days after said notice." Thereafter, the following events, among others, constituted defaults: "(a) The nonpayment by Lessee for a period of 30 days of any sum required hereunder to be paid by Lessee" or "(b) The nonperformance by Lessee of any other term, covenant, or condition of this agreement which is not cured within 10 days after notice thereof from Lessor." Upon default, the agreement provided the Lessor

> may terminate this Rental and or enter upon Lessee's premises and without any court order or other process of law may repossess and remove the property with or without notice to Lessee. Any such repossession shall not constitute a termination of this Rental unless Lessor so notifies Lessee in writing . . . .

Upon default, however, CD Construction was not immediately obliged to make all remaining payments. *But see, e.g., Hunter v. Snap–On Credit Corp. (In re Fox)*, 229 B.R. 160, 165 (Bankr. N. D. Ohio 1998) (recognizing the first part of the bright-line test is met when the lessee cannot cancel the agreement without simultaneously incurring an immediate obligation for the total cost of the equipment). The terms of the parties' agreement in this case are distinguishable from those recognized by the court in *Wolfe* as supporting a conclusion the agreement created a security interest under the first part of the bright-line test:

> [W]e find the lease agreement prohibited Lake MacBride from terminating its obligation to pay Frontier for the right to possess and use the beverage cart. The agreement states in bold capital letters,

**"THIS LEASE IS NONCANCELABLE."** The parties treat this statement as a hell-or-high-water clause, which is defined as "[a] clause in a personal-property lease requiring the lessee to continue to make full rent payments to the lessor even if the thing leased is unsuitable, defective, or destroyed." Additionally, if Lake MacBride defaulted by refusing to tender payment to Frontier, under section fourteen of the lease agreement it would simultaneously incur an immediate obligation for all of the agreement's remaining payments. Finally, section fifteen of the agreement states, "All obligations of Lessee hereunder shall continue until full performance has been rendered and shall not be released by termination of this Lease." Thus, we conclude the lease agreement meets the first part of the bright-line test.

795 N.W.2d at 75 (internal citations omitted).

Turning to the second part of the test, we conclude the agreement does not meet one of the four independent criteria set forth in section 554.1203(2). *See* Iowa Code § 554.1203(2)(a)-(d). The agreement provided CD Construction was to make seventeen monthly payments of $2500 plus tax, with a balloon payment on the eighteenth month (which works out to be $7,500 in view of the $50,000 purchase price). After six months of the lease, an option to purchase the excavator was granted to Doty for a purchase price of $50,000. In addition, HHI had made repairs in the amount of $23,731.16, which CD Construction would have been required to pay in order to purchase the excavator. Baggs testified the excavator was worth "[a]nywhere between 80- and 85,000." Doty testified he "figured" the excavator "was worth over $100,000." In its petition, CD Construction stated, "The value of the property is $136,000."

Upon our review, we conclude "the original term of the lease is [not] equal to or greater than the remaining economic life of the goods." *See id.* § 554.1203(2)(a); *see also id.* § 554.1201 cmt. (discussing subparagraph (a) and stating "a full payout lease does not per se create a security interest"). Similarly,

although there was an option to purchase the excavator by following certain conditions, there was no requirement or option to renew the lease, and even if renewal was permitted, it was not for little or nominal consideration. *See id.* § 554.1203(2)(b), (c). And even if CD Construction completed all the payments, it would have been required to pay for the repairs made to the excavator by HHI ($23,731.16) with the final "balloon" payment of $7500. Considering the initial amount of the lease ($50,000), we do not find the final payment would be nominal. *See id.* § 554.1203(2)(d); *cf. Wolfe*, 795 N.W.2d at 75 ("The law is well established that a purchase-option price of $1 amounts to nominal additional consideration, leaving no need to further analyze the economic sensibility of purchasing the equipment for that price." (citing *In re Macklin*, 236 B.R. 403, 407 (Bankr. E. D. Ark. 1999) (construing agreement as a secured transaction because lessee was provided the option to become owner of the equipment at the end of the lease term for the nominal sum of $1)).

We further observe the parties' actions support a finding that CD Construction sold the excavator to HHI and entered a lease-back agreement with HHI on the excavator. Doty testified Baggs told him "the only way he could do it was to make up an agreement like we had previously [with] payments scheduled," as the parties had done when Doty rented-to-purchase the excavator from HHI in 2010. Doty testified he understood that under the agreement he would make eighteen payments and "that would be it." Doty also stated "there was never any discussion of what it was worth." The parties similarly testified Baggs told Doty he would need a bill of sale before they could make a deal. Under these facts and circumstances, we conclude the second part of the test

under section 554.1203 has not been satisfied. The district court did not err in concluding the parties' agreement was a lease-back agreement following CD Construction's sale of the excavator to HHI.

CD Construction claims the district court based its rulings on findings of fact that are not supported by the evidence, including that Doty received the check for $35,000 "10 days earlier" than Baggs received the bill of sale. We observe that Doty testified Baggs told him he would need a bill of sale, so Doty called his accountant and had her prepare one. Doty further stated it was "all in the same day" that his accountant made out the bill of sale and delivered it to Baggs, and Doty went to Baggs's office, got the check, and signed the lease. We further note the bill of sale, signed by Doty, is dated October 4, and the lease agreement is dated October 6.

We believe the record evidence supports a finding that Baggs received the bill of sale, and Doty received the check, on or about October 4. We do not believe this factual distinction, however, affected the district court's findings or our review of the court's conclusion. As set forth above, Doty testified he was experiencing financial difficulties and he entered an agreement with Baggs as he had done before. Doty acknowledged the parties' prior agreement in 2010 was a rent-to-purchase contract. When Doty was asked, "So you understood that in either of the 2010 or the 2013 lease you would be ultimately responsible for any repairs on the machine?," Doty answered, "Because I was buying it out."

Moreover, because the district court found both Doty and Baggs "to be of equal credibility," it deemed the written documents received as evidence to be "persuasive in establishing the facts." The court noted the bill of sale "specifically

excludes any warranties of sale. Such a warranty exclusion clause is not normally included unless there has been an absolute sale." We further observe the letter sent by HHI to CD Construction describes the agreement as a lease and uses no "secured-transaction terms." *But see*, *e.g.*, *Gen. Elec. Capital Corp.*, 986 F. Supp. 2d at 1039 (noting that although the parties' contract was called a "Lease Agreement," the plaintiff's "Notification of Disposition of Collateral" letter made "clear that the parties' contract was a secured transaction" where it described the agreement "using mostly secured-transaction terms," including the plaintiff describing itself as the "Secured Party" and the defendant as the "Debtor," and the plaintiff stating it had a "security interest" in "collateral"). We affirm the court's conclusion that "the excavator was sold to HHI [which] leased it back to Doty/CD Construction."

## IV. *Default by CD Construction*

CD Construction claims the district court erred in finding it was "delinquent in its payments and failed to cure under the agreement." HHI counters CD Construction "did not pay the February and/or March payments, even under the most advantageous interpretation of the terms in the Lease."

The lease agreement is dated October 6, 2013. It provides it was for "a term beginning on 10/06/2013, running for 17 months, with a balloon payment on month 18," under which "Lessee agrees to pay Lessor as rent for the property $2500.00 per month." CD Construction made three payments: the October 2013 invoice was marked as "paid 11/13/2013"; the November invoice was marked as "paid 12/04/2013"; and the December invoice was marked as "paid 01/08/2014." The January 2014 and February 2014 invoices were not paid. On March 11,

2014, HHI sent CD Construction a notice of "Termination of Lease Agreement."

The letter stated:

> Please accept this letter as notice of termination of the lease of personal property between you and Hard Hat Industries, Inc. with regard to the personal property listed above. Pursuant to the lease, you were to pay the sum the $2,500 per month plus tax beginning October 6, 2013. You have not paid either the February or March payments for this year.
> You are in default of the terms of the lease pursuant to Section 18(a) regarding non-payment for a period of 30 days or more. Hard Hat Industries, Inc. is exercising its rights pursuant to the default in terminating the lease according to Section 19 therein.

Paragraph 18 of the parties' agreement provides:

**18. EVENTS OF DEFAULT.** The following events constitute defaults:
> (a) The nonpayment by Lessee for a period of 30 days of any sum required hereunder to be paid by Lessee.
> (b) The nonperformance by Lessee of any other term, covenant, or condition of this agreement which is not cured within 10 days after notice thereof from Lessor.

Paragraph 19 of the parties' agreement provides:

**19. LESSOR'S RIGHTS ON DEFAULT.** If Lessee shall default in performance or shall fail to observe, keep or perform any provision of this agreement required to be observed, kept or performed by Lessee, then in such event, Lessor, in addition to and without prejudice to any other remedies, may terminate this Rental and or enter upon Lessee's premises and without any court order or other process of law may repossess and remove the property with or without notice to Lessee. Any such repossession shall not constitute a termination of this Rental unless Lessor so notifies Lessee in writing and Lessor has the right in a commercially reasonable manner to either:
> (a) Rent the property to any other person or persons; or
> (b) Sell the property to the highest bidder at public or private sale.

Doty and Baggs had discussions but the delinquency was not satisfied.

Doty proffered a check to HHI for $5000 on March 17, 2014, for "excavator rent Febr + March," which was not accepted by HHI. Baggs testified that payment

was insufficient to cover the two months' missed rent under the agreement (the rental payments included seven percent sales tax; each payment was $2675). HHI subsequently sold the excavator for $83,500 to a company in Texas.

"Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999). Here, because HHI owned the excavator, no conversion occurred. See *Williams v. Redinger*, 161 N.W. 701, 702 (Iowa 1917) (observing there was no conversion when defendant was rightfully in possession of the property).

Upon our review, we conclude the district court correctly determined CD Construction defaulted on the lease agreement, the default was never cured, HHI was entitled to possession of the excavator, and no conversion occurred. We affirm on this issue.

## V. Conclusion

We affirm the district court's ruling entering judgment in favor of Hard Hat Industries, Inc.

**AFFIRMED.**